## STATE OF IOWA V. J. L. LEWIS AND ATLEE HART, Defendant and Appellant.

**Indictment:** DUPLICITY. An indictment which avers threats to accuse of crime and threats to injure property with intent to extort, is not bad for duplicity. It simply states conjunctively what the statute covers disjunctively.

INDORSING WITNESSES. An indictment should not be set aside because witnesses who gave immaterial testimony are not indorsed and the minutes of such evidence are not returned. Code, 4337.

MINUTES BEFORE GRAND JURY are not part of the record and the court cannot make them such.

EXTORTION. An indictment to extort by threats need not set out the threatening words. It is sufficient to say generally, that a threat to accuse of adultery was made.

**Intent.** A grand jury may examine one as a witness while investigating a charge against another, though the witness may be liable for prosecution for the same offense, so long as he is not compelled to answer self-incriminating questions.

**Attorney and Client.** An attorney whose employment by a defendant is conditional, who has held no confidential consultations with him, and has not investigated the defense, may be allowed to assist in the prosecution.

*Appeal from Plymouth District Court.*—HON. SCOTT M. LADD, Judge.

WEDNESDAY, DECEMBER 11, 1895.

The defendant Atlee Hart was jointly indicted with J. L. Lewis upon a charge of maliciously and feloniously threatening to accuse Daniel T. Gilman and D. T. Hedges of the crime of adultery, with the intention

to extort from said Gilman and Hedges a large sum of money, to-wit, the sum of one thousand two hundred dollars. The indictment was found and presented in Woodbury county. The defendant Hart demanded a separate trial, and on his application the venue was changed to Plymouth county, where he was tried and convicted, and the case is here upon his appeal from the sentence or judgment pronounced upon a verdict of guilty.—*Affirmed.*

*Lewis, Holmes & Beardsley* and *M. C. Jay* for appellant.

*Milton Remley,* attorney general, *T. F. Bevington,* county attorney Woodbury county, *P. Farrell,* county attorney Plymouth county, and *George W. Argo* for the state.

Rothrock, J.—I. It is necessary to make a statement of facts preliminary to the finding of the indictment, to the end that some of the questions presented by the appeal may be understood. It appears that in the summer and fall of the year 1892 there were sold and circulated in Sioux City a large number of copies of a weekly newspaper called the *"Sunday Sun."* The paper was printed in the city of Chicago, and large numbers were sent to Sioux City for sale. The defendant Lewis was in charge of the circulation in Sioux City. He had an office or place of business, and he held himself out as the local editor; that is, he had charge of the preparation and furnishing the local items or articles which it was thought would cause a demand for the papers at that place. The paper purported to be published in the interest of good morals, and to correct and reform the character and standing of the people in the localities where it was put in circulation. It is unnecessary to state more in the way of

facts in this connection, than this whole record shows
that the object of the publication was to extort money
from prominent citizens, by means of threats and
covert insinuations of the purpose to expose their
crimes and shortcomings in said newspaper. In some
cases knowledge was brought to the victims selected,
of the purpose to publicly expose them, by squibs and
innuendoes in the paper. In other cases the purpose
was made manifest by actual notice of the proposed
exposure. The result was that many of the persons
thus threatened paid considerable sums of money in
order to suppress the proposed publication, and thus
save themselves from public obloquy and disgrace. At
the time of the publication and sale of the newspaper,
the appellant, Hart, was a resident of Dakota City, in
Nebraska, some six miles from Sioux City. He was
not ostensibly connected with Lewis in the sale and
distribution of the papers. The ground upon which
the prosecution claimed that he was a guilty party in
the enterprise was that the facts show that he was the
hypocrite or go-between, who made settlements with
the victims, and that, while he was sharing the profits
of the business, he did so by pretending that he was
actuated by pure friendship for the persons threat-
ened, and without recompense or reward. The defend-
ant Lewis was arrested on several warrants issued by
justices of the peace. The appellant, Hart, was also
arrested on two warrants; but his cases were con-
tinued, and when the grand jury which found the
indictment in this case, as well as several other indict-
ments against Lewis, and one or more indictments
against another party, was organized, there had been
no preliminary examination in the prosecutions
against Hart. The grand jury convened on the nine-
teenth day of January, 1893, and proceeded to investi-
gate the charges of extortion against Lewis. A sub-
poena was issued for Hart to appear forthwith before

the grand jury, that he might be examined as a witness. There is some claim made that he was arrested on the subpœna, and many other statements are made as to hurrying him into the jury room against his consent. This is disputed, and, as we think what occurred before the grand jury is no part of the record in this case, we will not undertake to settle that dispute. It is conceded, however, that Hart asked to consult his attorneys, and was allowed to do so, and the grand jury then proceeded to examine him as a witness. He refused to answer any questions touching the charges against Lewis. Section 4287 of the Code is as follows: "When a witness under examination before the grand jury refuses to testify or to answer a question put to him by the grand jury, the grand jury shall proceed with the witness into the presence of the court and the foreman shall then distinctly state to the court the refusal of the witness, and if the court upon hearing the witness shall decide that he is bound to testify or answer the questions propounded he shall inquire of the witness if he persists in his refusal, and if he does shall proceed with him as in cases of similar refusal in open court." When appellant refused to answer questions he was taken before the court, as required by this statute. It is not an extravagant statement to say that the proceedings before the court were such as probably never before occurred in a court of justice. The questions were propounded to the witness and he refused to answer. Counsel for the state examined the witness for a time. Counsel for the witness asked for an order on the justices of the peace to bring in their dockets to show up the cases on preliminary examination, and the order was made, and the justices of the peace were examined in reference thereto. The witness continued refusing to answer, but later on he made answer to the questions, in these words, "I refuse to answer because the answer

might .tend to expose me to a criminal charge, and because the answer might constitute a link in the chain of evidence that would subject me to a criminal charge." After a lengthy examination, which was interspersed with objections and arguments,—the counsel for the witness contending that the state had no right to examine the witness before the grand jury, or to require him to appear to testify to any fact in connection with the *Sunday Sun* publication, and counsel for the state contending that the witness should be compelled to testify to all facts which would not tend to criminate him,—the matter was concluded, and the court decided that under the facts the witness should return to the grand jury for further examination. In the course of the decision the court used this language: "As I understand, any man may be called before the grand jury in any case, and may be asked any question which in the judgment of the grand jury is pertinent to the matter under investigation. It is the right of the grand jury. It is the right of the party called, when called and questioned, to claim his privilege and refuse to answer because the answer would tend to criminate him. Now, if he refuses to answer on these grounds, unless the court is satisfied that he is mistaken as to that, I think the court ought to excuse him from answering, and in this case the ruling of the court will be that the witness is excused from answering, in view of the record as it now stands." There was surely no just ground of complaint because the court directed the witness to return for further examination before the jury. He was fully instructed as to his rights, and it would have been an unwarranted exercise of judicial power to direct the grand jury that they should not proceed with a proper examination of the witness.

II.  The grand jury returned to the jury room, and the witness was further examined.  Several indictments were found against the parties engaged in the *Sunday Sun* enterprise.  Hart's name was not indorsed as a witness on any of the indictments, and no minutes of his evidence were returned by the grand jury to the court.  After the filing of the indictments, the appellant filed a motion asking that the testimony of appellant taken before the grand jury by the stenographic reporter who was appointed clerk to the grand jury, during said investigation, be attached and made part of the record in the cause.  This motion was overruled.  We think this ruling was correct.

The examination of the witness before the grand jury is no part of the record of the court.  The law requires that when an indictment is found the names of all witnesses on whose evidence it is found must be indorsed thereon, before it is presented to the court, and the minutes of the evidence of such witnesses must be presented with the indictment to the court, and filed by the clerk of the court, and remain in his office as a record.  Code, section 4293.  As we have said, Hart's name was not indorsed on the indictment, and the minutes of his evidence were not returned.  They were no more a part of the record than any other evidence which the grand jury did not think of sufficient importance to return as part of the evidence upon which the indictment was found.  Notwithstanding the refusal to make the stenographic report of record, the counsel for appellant, assuming that it is of record, because it was presented with the motion which was overruled, claims that the examination of the defendant as a witness is ground for setting aside the indictment.  It is true that the statute (Code, section 4337) provides that the indictment must be set aside "when the names of all the witnesses examined before the grand jury are not indorsed thereon; when

the minutes of the evidence of the witnesses examined before the grand jury are not returned therewith." But this does not require that the names of witnesses before the grand jury who gave no material testimony should be indorsed on the indictment. *State v. Little*, 42 Iowa, 51. And surely, if the grand jury should be of the opinion that the name should not be indorsed for that reason, there can be no requirement that the minutes of the testimony shall be returned and made of record. A number of adjudged cases are cited by counsel upon the subject of the right of a party to be exempt from testifying to facts which connect him with the commission of crime. Nearly all of these cases arise upon the refusal of a witness to testify, and his rights in proceedings against him for contempt for such refusal. It is a general rule that no one can be required to testify in any case, or in any legal proceedings, to facts which would tend to render him criminally liable, and that rule is part of our statutory law. Code, section 3647.

But we know of no reason why a witness before a grand jury may not be examined as to a criminal charge, as against another, even though he may be liable to prosecution for the same offense. That is no reason why a grand jury may not examine him as a witness, so long as he is not required to answer questions which may criminate him. The law exonerates him from answering self-criminating questions, but it goes no further than that. We have given this question quite full consideration, because in the printed and oral arguments it appeared to us to be the main ground upon which a reversal was demanded; and we may say in conclusion that under the law in this state, as settled in the case of *State v. Little, supra,* these minutes are not only no part of the record in the case, but that the court had no authority to make them of record.

III.   Another ground of the motion to set aside the indictment was that the grand jury was not selected, drawn, and summoned as required by law. We will not set out the evidence in connection with this objection to the indictment. The abstract filed by the state, when considered in connection with appellant's abstract, shows that the jury was selected and drawn in substantial compliance with all the statutory requirements.

IV.   After the motion was overruled the defendant filed a demurrer to the indictment, upon the following grounds: "(1) That it does not substantially conform to the requirements of the Code, in that it attempts to charge more than one offense; (2) the statements of facts in the indictment are insufficient to constitute a crime." The statute under which the indictment was found is as follows: "If any person either verbally or by any written or printed communication, maliciously threaten to accuse another of a crime or offense, or to do any injury to the person or property of another with intent thereby to extort any money or pecuniary advantage whatever, or to compel the person so threatened to do any act against his will he shall be punished," etc. The indictment was in these words: "The said J. L. Lewis and Atlee Hart, on or about the 15th day of November, in the year of our Lord one thousand eight hundred and ninety-two, in the county aforesaid, did unlawfully, willfully, maliciously, and feloniously, by verbal, written and printed communications, threaten to accuse Daniel T. Hedges and Daniel T. Gilman of having carnal knowledge of certain women, whose names are to the grand jury unknown, and of being guilty of a crime and offense, to-wit, the crime of adultery, said Daniel T. Hedges and Daniel T. Gilman being then and there married men, each of them having a lawful

wife living; and did then and there, unlawfully, willfully, maliciously, and feloniously, by said verbal, written, and printed communications further maliciously threaten to wrongfully injure the persons and property of said Daniel T. Hedges and Daniel T. Gilman; the said Daniel T. Hedges and Daniel T. Gilman being then and there bankers and real-estate men, and being engaged in the banking and real-estate business; that is to say, to maliciously injure, greatly damage, and break down their said business, and to prevent, hinder, and delay said Daniel T. Hedges and Daniel T. Gilman from successfully and profitably carrying on and conducting their said business, causing loss and ruin to the same; all done with intent on the part of said defendants thereby to extort from said Daniel T. Hedges and Daniel T. Gilman a large sum of money, to-wit, twelve hundred dollars, and to compel the said Daniel T. Hedges and Daniel T. Gilman, so threatened, to deliver to said defendants, against the will of said Daniel T. Hedges and Daniel T. Gilman, money as aforesaid; all done by said defendant in violation of law, and against the statute in such cases made and provided." Section 5685 of McClain's Code provides that an indictment must charge but one offense.

7        It is argued in behalf of the appellant that the indictment is bad, because it charges that the defendants threatened to accuse Hedges and Gilman of the crime of adultery, being one offense, and also threatened to wrongfully injure the person and property of Hedges and Gilman, which is another offense. We think this is a mistaken view of the indictment, and of the statute under which it was found. The statute is directed against threats to accuse another of a crime, or to do any injury to the property of another, with intent to extort. It has uniformly been held by this court that in statutes like this, which make different acts of a crime, and state the acts disjunctively,

all of the acts may be set out in the indictment in conjunctive form. *State v. Barrett,* 8 Iowa, 539; *State v. Baughman,* 20 Iowa, 498; and many other cases to be found in our digest. The rule is well expressed in 1 Bishop, Cr. Proc. section 586, as follows: "If a statute makes it a crime to do this or that, mentioning several things disjunctively, all may be charged in a simple count, but it must be the conjunctive 'and' where 'or' occurs in the statute. All are but one offense, committed in different ways, and proof of it in any one of the ways will sustain the allegation." Under the second ground of demurrer, it is insisted that the indictment is insufficient because the threatening words, writings, and printed communications should be set out in the indictment. We do not think this was required. The thought of counsel appears to be that the crime of making threats with intent to extort is like cases of slander and libel, where the slanderous words or libelous writings are required to be pleaded. In this indictment the threat is set out in general terms, as a threat to accuse Hedges and Gilman of the crime of adultery. This is sufficient. *State v. O'Mally,* 48 Iowa, 501; *Com. v. Moulton,* 108 Mass. 307.

V. The demurrer having been overruled, the next question arose upon an objection by defendant to the firm of Argo, McDuffie & Kichman being allowed to appear as assistant counsel in the case, in behalf of the state. The ground of the objection was that said firm had been employed to assist in the defense of appellant, and had abandoned the employment, and for that reason they should not be allowed to aid the prosecution. A full hearing was had on this matter. Affidavits were presented and witnesses were examined in open court, and the court decided that there was no just ground for sustaining the objections. We will not discuss the evidence on this side issue in

the case. The whole of the evidence has been examined, and the decision of the court is in the record; and we concur with that decision, in holding that the alleged employment of the firm by the defendant was not complete, but merely conditional, and that they had made no investigation of the appellant's defense, and sustained towards him no confidential relations growing out of any consultation with him in reference to the case. The objections were properly overruled.

We have now reached the trial of the case. No objection was made upon the impaneling of the jury. Many witnesses were examined on the part of the prosecution. It is urged with great earnestness that the verdict was without support in the evidence, and that the motion for a new trial should have been sustained on that ground. We have given the facts disclosed in the evidence most careful consideration, which has taken much time, as the abstracts in the case are unusually voluminous, being nearly six hundred pages. Of course, it will be understood that we ought not to undertake to discuss the evidence in detail. It will be sufficient to state our conclusions. The *Sunday Sun* was circulated and sold by Lewis in Sioux City for two purposes. One was the revenue derived from its sale, which arose largely from the fact that it was known to be a sensational publication, depending on patronage by reason of its attacks upon leading citizens of the city. The other, and, so far as appears from the record, its principal, source of revenue, was the money received from those who were threatened with exposure in its columns. The threats were not open and direct, but they were none the less threats, the same as if the statements were made that if money was not paid the publication of the scandal would appear. The question of the defendant's guilt depends upon the fact whether the evidence shows that he was

associated and acted in conjunction with Lewis in the scheme to extort money. As we have said, the theory of the defense is that he had no connection with Lewis, further than to intercede with him, and obtain from him terms of settlement with the persons selected as victims. We think the jury was fully warranted in finding that the claim of friendship was a mere pretense. The instances in which he made settlements are too numerous to be attributed to disinterested friendship. It appears to have been generally understood that he was the person who effected the settlements. In one or more instances he took promissory notes payable to his own order. And there is direct evidence as to his guilt in the attempt to extort from Gilman and Hedges. We do not regard it as necessary to further discuss the question as to the general effect of the evidence. The record is full of facts and circumstances which point plainly and clearly to his guilt.

VII. It is said that the court erred in permitting the prosecution to introduce evidence concerning other instances of extortion and attempts to extort than that set forth in the indictment. It is to be remembered that Lewis and Hart were jointly indicted, and jointly charged with making threats to extort money from Gilman and Hedges. The court carefully guarded the rights of the defendant as to these acts by instructing the jury that, unless it was found from the evidence that there was a general conspiracy or agreement entered into by Lewis and Hart to carry on a general system of extortion, the acts of Lewis should not be considered as evidence against Hart. And the jury were further instructed that evidence tending to show that Hart was connected with other similar offenses should be considered only for the purpose of aiding the jury in

determining with what intent Hart acted in the trans-action set out in the indictment. When these other facts and circumstances were thus guarded, there was no error in permitting the introduction of the evidence last above referred to. *State v. Saunders,* 68 Iowa, 370 (27 N. W. Rep. 455); *State v. Jamison,* 74 Iowa, 617 (38 N. W. Rep. 509). In 7 Am. & Eng. Enc. Law, 780, it is said: "It is now generally held that, for the purpose of proving the intent, evidence of similar pre-tenses made about the time and in the same neighbor-hood, to other persons, of the pretenses alleged in the indictment, may be introduced." It is unnecessary to cite authority in support of the correctness of the ruling admitting evidence of the acts of Lewis upon the theory that the defendants were engaged jointly in a common undertaking to profit by extortion from such victims as they might select as subjects. The rule is elementary. And we do not think that any improper evidence of this kind was introduced. It all appears to relate to a time while the joint enter-prise was being carried out.

VIII. There are many other alleged errors pre-sented and discussed by counsel, which we do not think demand special mention. We have examined them, and find no error. They relate to alleged errors in the admission and exclusion of evidence, errors in the charge to the jury, and in refusing to give instruc-tions asked by the defendant. The instructions given were full and complete, and covered every question necessary to be considered under the evidence, and they are in accord with instructions in criminal cases which have been frequently approved by this court. One ground of the motion for a new trial was founded upon newly-discovered evidence supported and resisted by affidavits. The court did not err in overrul-

ing this motion, if for no other reason than that the evidence was discovered before the close of the trial. The judgment of the district court is *affirmed.*