STATE OF IOWA, Appellee, v. SANBORN E. KNIGHT, Appellant.

PHYSICIANS AND SURGEONS: Revocation of License—Right to 1 Initiate Proceeding. The right of the county attorney to initiate proceedings for the revocation of the license of a practicing physician is not dependent on any authorization from the state board of health.

PHYSICIANS AND SURGEONS: Revocation of License—Evidence. 2 Evidence held ample to justify a decree which revoked the license of a physician.

WITNESSES: Privilege of Witness—Self-debasement. In an equitable 3 action by the State to revoke the license of a physician, the defendant may not base a claim of error on the fact that, over *his* objections, the court permitted witnesses for the State to expose themselves to public disgrace and ignominy by their testimony.

PHYSICIANS AND SURGEONS: Revocation of License—Incompetent 4 Evidence—Effect. In an equitable proceeding for the revocation of the license of a physician, the reception of immaterial or incompetent evidence will be deemed harmless, because it will be presumed that all such testimony was rejected in arriving at the final decision.

PHYSICIANS AND SURGEONS: Revocation of License—Tampering 5 with Witness. Evidence is admissible, in an equitable action for the revocation of the license of a physician, which tends to show that the defendant had tampered with a witness, in an effort to induce her to change her testimony.

WITNESSES: Confidential Relations—Waiver. A physician may testify 6 to facts learned by him in the treatment of a patient when the patient has already detailed said facts to the grand jury or to other persons with whom the patient had no confidential or professional relation.

**PHYSICIANS AND SURGEONS:** Revocation of License—Appeal—
7 **Transcript at Expense of County.** The statutory requirement that,
in criminal cases, an impecunious defendant may, on appeal, have a
transcript of the record at the expense of the county, has no ap-
plication to an appeal by a defendant in an equitable action to re-
voke his professional license.

Headnote 1: 30 Cyc. p. 1557 (Anno.)  Headnote 2: 30 Cyc. p. 1557
(Anno.)  Headnote 3: 40 Cyc. p. 2548.  Headnote 4: 4 C. J. pp. 999,
1000.  Headnote 5: 30 Cyc. p. 1557 (Anno.)  Headnote 6: 40 Cyc. pp.
2401, 2403 (Anno.)  Headnote 7: 30 Cyc. p. 1558 (Anno.)

Headnote 6: 48 L. R. A. (N. S.) 395; 28 R. C. L. pp. 544, 545.

*Appeal from Boone District Court.*—SHERWOOD A. CLOCK,
Judge.

NOVEMBER 15, 1927.

Action in equity, under the provisions of Sections 2492 and
2499, Code of 1924, to revoke and cancel the license of the de-
fendant to practice medicine and surgery in the state of Iowa,
by reason of certain alleged immoral, unprofessional, and dis-
honorable conduct on the part of the defendant. The trial
court entered judgment and decree that the license be revoked,
and that the licensee shall not engage in the practice of his
profession within the state of Iowa on and after the entry of
the decree. The defendant appeals.—*Affirmed.*

*Baker & Doran,* for appellant.

*John Fletcher,* Attorney-general, *Neill Garrett,* Assistant
Attorney-general, *Walter Canaday,* County Attorney, and *Wal-
ter R. Dyer,* for appellee.

DE GRAFF, J.—This is a suit by the State of Iowa upon the
relation of the county attorney of Boone County, Iowa. The
objective is the revocation and cancellation of the license of the

1. PHYSICIANS       defendant, Sanborn E. Knight, to practice
AND SURGEONS:     medicine and surgery in the state of Iowa. The
revocation of
license: right to   sufficiency of the evidence to sustain the decree
initiate pro-
ceeding.            entered by the trial court is seriously ques-
tioned by the appellant, Knight; but, before reviewing this

point, we give attention to the proposition that the cause was not properly instituted, and consequently the court was without any jurisdicion whatever to try the proceeding. In brief, the appellant claims that the county attorney had no right to commence this action, for the reason that such authority must come "from those who are higher up," as stated by the appellant. This contention involves the construction of the statutory provisions having relation to the commencement of an action of this character.

I. The statute provides that:

"The district court of the county in which a licensee resides shall have jurisdiction of the proceeding to revoke or suspend his license." Section 2495, Code of 1924.

It is further provided that:

"The petition for the revocation or suspension of a license may be filed: (1) By the attorney-general in all cases. (2) By the county attorney of the county in which the licensee resides." Section 2496.

Section 2497 reads:

"The state department of health shall direct the attorney-general to file such petition against any licensee upon its own motion, or it may give such direction upon the sworn information of some person who resides in the county wherein the licensee practices."

It is further provided that:

"The attorney-general shall comply with such direction of the department [of health], and prosecute such action on behalf of the state, but the county attorney, at the request of the attorney-general, shall appear and prosecute such action when brought in his county." Section 2498.

Do these provisions contemplate and intend different methods of commencing such a proceeding? We answer in the affirmative. It is obvious that the department of health may take the initiative, and direct the attorney-general to act, and it is made his duty to comply; but a fair interpretation of these sections does not preclude the state department of justice from acting in the premises on its own initiative. In brief, the direction from the department of health is not a condition precedent for the commencement of an action by the attorney-general. The Medical Practice Act of this state is predicated on the

police power, and likewise are revocations and suspensions of licenses to practice medicine and surgery within the state. If the department of health obtains information concerning the transgression of a licensee, it may, upon its own motion, take the preliminary steps, as provided by statute, and cause an action to be instituted. It is not the legislative intent that, before a petition is filed to revoke the license of a practitioner, information must first be received by the department of health and authorization given, either to the attorney-general or to the county attorney, for the commencement of such action.

The department of health has a duty enjoined by statute, to wit: To direct the attorney-general, in the exercise of his discretion, upon information received, to file such petition. This. is done upon its own motion, or it may be done upon the information of some person residing in the county wherein the licensee practices. This does not prohibit the initiation of the action by the attorney-general or by the county attorney. The contrary thought is found in the statute.

The legislature had in mind the safeguarding of life and health, and the agencies named in the statute are but different methods to obtain the results contemplated by the statute. Direct methods were intended, and not circumlocution in securing the end in view. In this particular, the department of health, the attorney-general, and the county attorney are protective agencies. The department of health is privileged to use the attorney-general, but this is not exclusive. The statutory methods are concurrent, and the reason is apparent. The instant action was commenced by the county attorney, and properly so. It is not material that it might have been instituted by some other method.

II. Does the evidence sustain the decree entered? This is an action in equity, and triable *de novo* in this court. The statute provides that, in an action of this character, the state shall be named as plaintiff, and the licensee as defendant, and that the charges against the licensee shall be stated in full. Section 2499, Code of 1924. It is provided in Section 2492 that a license to practice a profession shall be revoked or suspended when the licensee is guilty of "immoral, unprofessional, or dishonorable conduct." The instant petition charges the de-

2. PHYSICIANS AND SURGEONS: revocation of license: evidence.

fendant with certain acts and conducts which are, in their nature, clearly unprofessional and dishonorable.

It is alleged, *inter alia*, that a death certificate was issued for the burial of the body of Eva B. Newcomb, stating the cause of death to be double pneumonia, "when in fact said Eva B. Newcomb died of .blood poisoning, following a criminal abortion;" that, on a certain date, said defendant administered drugs to and used instruments in and upon the body of a certain named woman, with intent and for the purpose of producing a miscarriage, the same not being necessary to save her life; that, on another named date, the said defendant administered drugs to and used instruments in and upon the body of another named woman, for the same purpose, and with the same result; that, on another named date, he administered drugs to and used instruments in and upon the body of another named woman, for the same purpose, and with the same results; that, on another date, the same act was performed upon another woman, with the same intent, and with the same results; that, on another date, the same operation was performed upon another named woman, with the same intent, and with like results; that, on another date, and upon another named woman, the same act was performed, with the same results.

We deem it unnecessary to outline the evidence which proves or tends to prove the acts charged. No purpose will be served in so doing. It is sufficient to state our conclusion. We believe that no unprejudiced person can read the record facts and not be convinced that the trial court was fully justified in the findings made. The record is replete with instances of immoral, dishonorable, and unprofessional acts on the part of the defendant in the practice of the profession which he was duly licensed to practice. It is not necessary that the State should establish, by satisfactory proof, all of the acts laid at the professional door of this defendant.

III. It is urged by the appellant that the court erred in permitting certain of the plaintiff's witnesses, on whom it was alleged abortive practices were used, to testify, over *his* objec-

3. WITNESSES: tion, as to matters which exposed *them* to public disgrace and ignominy. These witnesses had previously given their testimony before the grand jury, and thereby waived the right, if any existed, to

refuse to testify. It is said in *State v. Rowley,* 198 Iowa 613:

"If the privilege to the witness was denied wrongfully, the wrong was to the witness, and not to this defendant."

See, also, *State v. Lewis,* 96 Iowa 286; *State v. Peffers,* 80 Iowa 580.

As heretofore observed, the witnesses did not claim privilege when they testified before the grand jury, but when they were placed upon the witness stand by plaintiff in the instant trial, the counsel for the defendant made the objection on their behalf. They asked no protection. The privilege in question was for the witnesses to exercise, not for the counsel for the defendant. It was no part of the duty of the counsel for the defendant to advise witnesses called on behalf of the plaintiff. *State v. Hardin,* 144 Iowa 264.

IV. Error is predicated on the proposition that the court should have sustained objections to the offer in evidence of signed statements made by certain of the State's witnesses be-

4. PHYSICIANS AND SURGEONS: revocation of license: incompetent evidence: effect.

fore the grand jury. As we read the record, these matters were not introduced for the purpose of impeachment. It is true that some of the witnesses were reluctant to testify, and in certain details changed their original stories. It is quite apparent that someone had been tampering with certain of the witnesses, to secure a different recital of their relation with the defendant while he was acting in a professional capacity. It will be presumed that the trial court did disregard any immaterial or incompetent testimony in reaching the decision on the issue involved.

One of the witnesses, who had been treated professionally by the defendant, was permitted to state the facts concerning her relations with the defendant. As a witness in the case at

5. PHYSICIANS AND SURGEONS: revocation of license: tampering with witness.

bar, she said that she had lied before the grand jury; and in her testimony upon this trial she first testified that the defendant "at no time inserted an instrument into my womb or put some medicine in with a syringe or packed me with absorbent cotton." She also stated that, at the time she was before the grand jury, she was scared and nervous, and did not know the contents of the papers that she signed there. Many of her statements upon the trial of this cause were at material variance

with her testimony before the grand jury. Subsequently to the giving of this testimony, she was arrested, and, upon seeking advice and counsel from an attorney, she indicated a desire to tell the truth. She again did take the witness stand, and, over objection of the defendant, gave the same testimony as she did before the grand jury.

It further appears that she had signed a statement, known in the record as "Exhibit W," in which she attempted to exculpate the defendant, and, *inter alia*, said:

"Doctor Knight * * * did not perform an abortion on me. I have never asked Dr. Knight to perform an abortion on me. All Dr. Knight did for me was to see that I did not have blood poison."

It appears from the record that someone had written a letter to this woman, while she was employed at Younker's store in Des Moines. It is very certain that she received this letter after she had testified before the grand jury. At any rate, in response to it she went to Dr. Knight's office, with her father. This letter is in evidence, and it purports to be signed by "Dr. Knight." It directed when she should come to Boone, and stated:

"It will save you a lot of trouble and will be for your good. I may have to go to Des Moines Sunday. If I do it will be early and I will get home soon after noon. If you come up Sunday I will meet you after I get back and you can ring me up and I will meet you at the office. I am trying to keep you from getting into an awful mess which you are sure to do if you do not see me. I will pay your expenses."

She testified that she did meet the defendant at his office, and that the defendant talked with her about the testimony she had given before the grand jury. It was the defendant-doctor who asked her to sign the previously prepared typewritten statement, and she testified that he paid her $3.00 for car fare. She did not prepare the statement; but the last line, relative to "her own free will," was in her handwriting, having been dictated to her by the doctor at the time she was asked to sign the statement. It was quite apparent to the trial court, as it is to this court, that these matters were not helpful to the doctor in disproving the charge made against him. Under the

peculiar state of this record in this particular, there is no ground for reversal here.

V.   It is also urged that the court erred in admitting the testimony of the physicians, respectively, who attended certain of the women subsequently to the alleged abortions.   It is the

6. WITNESSES: confidential relations: waiver.

claim of the plaintiff that the evidence discloses that these three women had miscarriages, following an abortion performed by the defendant.   It is the claim of the defendant that, by reason of the relation of physician and patient, the physicians who treated these women professionally at said time should not have been permitted to testify.   Section 11263, Code of 1924.   These women had previously appeared before the grand jury, and had made public, to that extent, their relations with the defendant.   The privilege existing between physician and patient may be waived by the patient.   It was done in this case.   The defendant is in no position to invoke the prohibition, under the instant circumstances.   But there is another reason why the inhibition of the statute (Section 11263, Code of 1924) may not be invoked, and we may illustrate this reason from the record itself.

It is shown that Dr. W. E. Laidley treated professionally one Fern Carroll, following the alleged abortion by the defendant upon her.   She had told her story before the grand jury, and also as a witness on the trial of this case.   On cross-examination, this witness said, ''It was not agreed or understood that he [defendant] was going to perform an abortion or cause me to miscarry a child;'' although she had previously stated that the defendant ''took me into his operating room, put this instrument into my vagina, and packed it with cotton here in his office in Boone.   I came over to Boone again, to have him do that.''   She further testified:

''When I took sick, over at my aunt's, I didn't call Dr. Knight.   I don't know who called Dr. Laidley.   He treated me there at that time.''

The aunt, Mrs. Charles Burrell, in whose home Fern Carroll was treated professionally by Dr. Laidley, was called as a witness, and she testified that she was there while the doctor was waiting on the Carroll woman, and further:

''I know what was the matter with Mrs. Carroll.   I am a mother.   Mrs. Carroll was taken sick at our house, and Dr.

Laidley was called. She had a miscarriage. That is what Dr. Laidley said. It was after midnight she was taken sick. She was groaning. I saw Laidley take a fetus from her.''

When Dr. Laidley was called as a witness by the plaintiff, the defendant objected to any testimony by him (Dr. Laidley), by reason of the fact that the relation of physician and patient existed, and that any confidential communication properly intrusted to him was inadmissible under the statute.

It is true that, under the invoked statute, what is learned by a physician is a sealed book, and it is said in *State v. Mickle,* 199 Iowa 704, that:

'' * * * in no case will a lawyer be permitted, even if he should be willing to do so, to divulge any matter which has been communicated to him in professional confidence.''

The same rule applies to a physician. In the *Mickle* case, supra, the alleged confidential matter had already been divulged, and was known by persons who occupied no professional relation to the client. Whenever a communication is made in the presence of a third person, it is not a privileged communication, within the purview of the statute. *State v. Mickle,* supra.

It is quite evident that, under the circumstances in the case at bar, the statutory prohibition does not find application. The same rule is applicable to the objections of the testimony of Dr. R. H. Gunn, who treated another woman on whom it is alleged abortive practices were used by the defendant. Plaintiff called Dr. Gunn as a witness upon the trial, and he testified as to his diagnosis and the history of the case which he learned from the patient. At the time of the diagnosis, witnesses were present.

In the light of the record, we are not constrained to hold that reversible error was committed by the trial court in permitting, over objection, the doctors in question to testify.

VI. Lastly, it is contended that the trial court was in error in overruling an application for an order for a transcript of the shorthand notes on this appeal at the expense of Boone

7. PHYSICIANS
AND SURGEONS:
revocation of
license: appeal:
transcript at
expense of
county.

County, Iowa. The basis for this application is that the defendant was without money, and by the decree entered was deprived of his means of earning money. Appellant concedes that there is no specific provision in the statute which would warrant the lower court in making such an order, unless the case at bar be construed as quasi criminal. This is not a criminal case. The statute provides that, if the trial judge of the district court from which an appeal is taken is satisfied that the defendant in a criminal case is unable to pay for a transcript of the evidence, an order may be entered that the expense of the transcript of the evidence shall be paid by the county in which the defendant was tried. Section 14000, Code of 1924. This provision is not mandatory, but it is sufficient to say that it has no present application.

The instant trial consumed considerable time in the trial court. Every chapter of the defendant's life and activities was reviewed before the trial court, and much more could be written than is indicated in this opinion. We are constrained to hold that the findings made were proper, and that the propositions upon which a reversal is asked are not sustainable. The decree entered is—*Affirmed.*

EVANS, C. J., and STEVENS, ALBERT, and MORLING, JJ., concur.

WAGNER, J., not participating.