MAX DUCKWORTH, Petitioner, v. DISTRICT COURT OF WOODBURY COUNTY and EARL PETERS, Judge, Defendants, Respondents.

No. 43444.

JANUARY 21, 1936.

George Gorder, for petitioner.

H. M. Havner, Special Prosecutor, and M. E. Rawlings, County Attorney, for respondents.

HAMILTON, J.—The sole question involved in this case is: Did the petitioner, Max Duckworth, by appearing before the grand jury of Woodbury county and testifying, waive his right to claim his privilege or immunity from testifying at the trial of the case in the district court, wherein the indictment of the defendant on trial was based in part upon the testimony of the petitioner given before the grand jury, on the ground that his answers to questions propounded to him would tend to incriminate him and expose him to public ignominy? If by testifying before the grand jury he did thus waive his right to later claim his privilege, then the trial court was right in holding witness should answer, and in inflicting punishment for contempt of court upon the witness for refusing to answer, and the writ should be annulled. On the other hand, if his conduct in testifying before the grand jury did not amount to a waiver, then the order of the court was wrong and illegal and the writ should be sustained. This precise question has never been squarely before this court and hence has never been determined in this state. That the questions which were propounded to the witness called for evidence which was relevant and material to the issues involved in the case on trial is not questioned by the petitioner. Neither is it claimed by respondent that the answers would not tend to incriminate the witness and expose him to public igno-

miny. The respondent contended, and the lower court found that by appearing before the grand jury and testifying the witness waived his privilege.

The general rule, which is almost universally adhered to by courts of last resort, that a witness may refuse to answer any question which tends to incriminate him, is of very ancient origin. It has been the established rule in England and America from the earliest times; it has been looked upon and considered as a natural right to which everyone is entitled. As said in an early case in Georgia, Marshall v. Riley, 7 Ga. 367, 370:

"The maxim of the Common Law * * * that no man is bound to accuse himself of any crime, or to furnish any evidence to convict himself of any crime, is founded in great principles of constitutional right, and was not only settled in early times in England, but was brought by our ancestors to America, as a part of their birthright. This * * * is a maxim of the law, founded upon the principles of British freedom, and may be considered as one of our constitutional rights and privileges."

Chief Justice John Marshall in discussing this question in Burr's Trial, Fed. Cas. No. 14,692e, 1 Burr's Trial, 244, said:

"Many links frequently compose that chain of testimony which is necessary to convict any individual of a crime. It appears to the court to be the true sense of the rule that no witness is compellable to furnish any one of them against himself. It is certainly not only a possible, but a probable, case that a witness, by disclosing a single fact, may complete the testimony against himself; and to every effectual purpose accuse himself as entirely as he would by stating every circumstance which would be required for his conviction. That fact of itself might be unavailing, but all other facts without it would be insufficient. While that remains concealed within his own bosom, he is safe; but draw it from thence, and he is exposed to a prosecution. The rule which declares that no man is compellable to accuse himself would most obviously be infringed by compelling a witness to disclose a fact of this description. What testimony may be possessed, or is attainable, against any individual, the court can never know. It would seem, then, that the court ought never to compel a witness to give an answer which discloses a fact that would form a necessary and essential part of a crime which is punishable by the

laws." See, also, Counselman v. Hitchcock, 142 U. S. 547, 12 S. Ct. 195, 35 L. Ed. 1110.

By the Fifth Amendment to the Constitution of the United States it is provided, among other things:

"No person * * * shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law." A similar provision is found in the Constitutions of many of the states of the Union. Our Constitution, however, contains no such specific provision.

In the case of State v. Height, 117 Iowa 650, at page 657, 91 N. W. 935, 937, 59 L. R. A. 437, 94 Am. St. Rep. 323, Justice McClain in discussing this question said:

"The rule against requiring a witness to give self-criminating evidence in any judicial proceeding is much older than our constitution. It is one of the fundamentals of the common law. The rule itself and the reasons for it are thus stated by an eminent authority: 'Upon a principle of humanity, as well as of policy, every witness is protected from answering questions by doing which he would criminate himself,—of policy, because it would place the witness under the strongest temptation to commit the crime of perjury; and of humanity, because it would be to extort a confession of the truth by a kind of duress, every species and degree of which the law abhors. It is pleasing to contrast the humanity and delicacy of the law of England in this respect with the cruel provisions of the Roman law, which allowed criminals, and even witnesses in some instances, to be put to the torture for the purpose of extorting a confession.' 1 Starkie, Ev., 41. And see 1 Rosc., Cr. Ev., 150. * * * The origin of the doctrine embodied in the maxim, 'Nemo tenetur seipsum accusare,' seems to be obscure. Perhaps it originated in a protest against the inquisitorial procedure of the ecclesiastical courts, and was introduced by statute. See article by Prof. Wigmore in 5 Harvard Law Review, 71. But at any rate it became a general principle of the common-law system of jurisprudence before the settlement of this country, and was regarded as a guaranty against inquisitorial proceedings."

In speaking of the fact that our Constitution contains no specific provision on this subject, Justice McClain further says:

"* * * we cannot concede that there is in the constitution of our state no guaranty against inquisitorial proceedings for the purpose of compelling a defendant to disclose criminating evidence. Our constitution does explicitly provide (article 1, section 9) that 'no person shall be deprived of life, liberty or property without due process of law,' and the term 'due process of law' has received by this court, as well as by all the courts of this country, a very broad and liberal interpretation. * * * Notwithstanding the fact already suggested that the cases heretofore cited refer to a form of constitutional provision not found in our own bill of rights, we are convinced that the principle itself is too fundamental to have been purposely omitted from the charter of liberties of the people of Iowa, and that, had there been no such specific provision anywhere, the same result would have been reached under the general guaranty of due process of law. If such a guaranty is not thus to be implied, then we have in this state the anomalous situation that by legislative provision the inquisitorial proceedings, so generally referred to as reprehensible, and the absence of which is so constantly mentioned as one of the excellencies of the common law, might be introduced. There would be nothing unconstitutional, under such a construction, in a statute which should restore torture by the thumbscrew or the boot as a legitimate means of securing evidence in a criminal prosecution. * * * Lord Camden in Entick v. Carrington, 19 How. St. Tr. 1030, quoted at length in Boyd v. U. S., supra [116 U. S. 616, 622, 6 S. Ct. 524, 29 L. Ed. 746, speaking of the underlying doctrine in support of this rule, and said] : '* * * Whether this proceedeth from the gentleness of the law toward criminals, or from a consideration that such a power would be more pernicious to the innocent than useful to the public, I will not say. It is very certain that the law obligeth no man to accuse himself, because the necessary means of compelling self-accusation, falling upon the innocent, as well as the guilty, would be both cruel and unjust. * * * The innocent would be confounded with the guilty.' " .

In this state we have a statutory provision, section 11267 of the Code, which provides: "When the matter sought to be elicited would tend to render a witness criminally liable, or to expose him to public ignominy, he is not compelled to answer, except as otherwise provided." By section 11268 certain excep-

tions are set forth, and by section 11269, one who is compelled to give testimony concerning the matters contained in the exceptions if the matter tends to expose him to public ignominy or incriminate him, is immune from prosecution for any crime which such testimony or evidence tends to prove or to which the same relates.

In the case of Printz v. Cheeney & Street, 11 Iowa 469, at page 471, this court said:

"The rule is well settled that where it reasonably appears that the answer of a witness will expose him to a penal liability, to a criminal charge, or to any kind of punishment, he is not compelled to answer," quoting and citing with approval the language of Chief Justice Marshall in the Burr case.

It has been quite generally held by the courts that the legislature may by law require a witness to give incriminating testimony in certain cases, but such a statute in order to be valid must afford absolute immunity against future prosecution for the offense to which the question relates. See Counselman v. Hitchcock, 142 U. S. 547, 12 S. Ct. 195, 35 L. Ed. 1110, supra. The witness is likewise deprived of the privilege where he takes the witness stand and testifies to part of a transaction, the courts holding that on cross-examination he may be compelled to give testimony which is material and relevant as to the entire transaction, even though the answers may tend to incriminate him. It seems to be the general rule quite universally adhered to that aside from these two exceptions, namely,—where a statute requires the witness to answer and guarantees immunity from future prosecution, or where the witness has related a part of the transaction, he may on cross-examination be compelled to give the entire transaction,—the rule that a witness cannot be compelled to give incriminating testimony is absolute and unqualified. See extended note in the case of Evans v. O'Connor, in 75 Am. St. Rep. beginning at page 318.

In the case of Crosby v. Clock, 208 Iowa 472, 225 N. W. 954, where a witness was sent to jail for contempt for not answering and a writ of certiorari was issued, the question involved was whether the matter related to subjects included in exceptions to the general statutes where if the answer is given the witness is immune from prosecution, and our court quotes with approval from a Texas case (Ex parte Napoleon, 65 Tex. Cr.

R. 307, 144 S. W. 269) on page 480 of 208 Iowa, on page 957 of 225 N. W.:

" 'Before a witness can be compelled to give evidence about any matter which would incriminate him, he must be assured by the proper officials, in a *legal* manner, that he will not be prosecuted * * * he was not compelled to answer the question until immunity from punishment was guaranteed him. If the record disclosed that he was guaranteed immunity from punishment for the offense about which he was being questioned, we would hold that he would be compelled to answer * * *.' "

And we held that the witness was entitled to a record showing such immunity, and that no such record appeared in that case, and the order of commitment was annulled and the petitioner was discharged.

While the witness Duckworth was at least by implication promised immunity by the special prosecutor and the grand jury, it was not a legal immunity, as neither the prosecuting attorney nor the grand jury had any legal authority to grant or guarantee immunity from prosecution as a basis for gaining the consent of the witness to testify before the grand jury, the question not being one concerning matters contained in section 11268 of the Code, for which the statute furnished immunity. This court has held that where a witness is subpœnaed before the grand jury and gives testimony, such testimony is not voluntary. In the case of Doyle v. Willcockson, 184 Iowa 757, 761, 169 N. W. 241, 242, we said:

"We are of the opinion that where appearance before the grand jury is on subpœna, and answers are made in response to questions by the county attorney or members of the jury, that such answers are compelled testimony in the view of immunity provisions. See Counselman v. Hitchcock, 142 U. S. 547, 12 S. Ct. 195, 35 L. Ed. 1110. We think that such compelled testimony may base immunity, though no privilege is claimed before the grand jury. The mere suggestion of what might be done before a body of whose action the witness has no advance notice, and before whom he may not have counsel, suffices to support this holding."

It makes no difference that the investigation before the

grand jury has reference to a person other than the witness, for we again say:

"It seems that the investigation in the course of which relator was interrogated was not one directed against herself, but was one instituted concerning one Brown. We are of opinion that this is immaterial, and that, if the testimony be otherwise of a character that its use is prohibited by the statute, it does not matter that it was elicited in a proceeding against or investigation of some one other than the witness."

Likewise, in the case of State v. Meyer, 181 Iowa 440, 449, 164 N. W. 794, 797, we find this language:

"The voluntary admission of crime, or of facts tending to connect one with the commission of a crime, are all receivable against him when on trial for the crime. But it is fundamental that no one can be compelled to give testimony against himself, involving him in criminality. To be voluntary, it must be spontaneous. It must be the free will offering of his own mind. Clearly, if one is called into a judicial proceeding in which his guilt or innocence is involved, he cannot be required to testify as to any matter which would tend to incriminate him. If he is compelled to answer, under oath, questions put to him by a judicial officer, having charge of an investigation touching his connection with the crime then being investigated, statements then made are not admissible in any future proceedings involving the same offense, when he is put on trial for that offense."

In this Meyer case the witness was the defendant and an attempt was made to offer testimony given by the witness at the coroner's inquest. The question raised was relative to the proposition as to whether such testimony was voluntary. If voluntarily given it could, of course, be used as an admission against her, but the court held that such testimony before the coroner's inquest was not voluntarily given, and the court said:

"The examination shows, we think, that it was the thought of the inquisition that her hands were red with blood, and that by her own mouth her guilt could be shown. We think evidence obtained in this way would not be admitted against her. To allow it would be violative of well-established rules recognized by this court. The same power that punishes makes also the law

that protects. See State v. Storms, 113 Iowa 385, 387, 85 N. W. 610, 86 Am. St. Rep. 380; State v. Clifford, 86 Iowa 550, 53 N. W. 299, 41 Am. St. Rep. 518.''

Some question is raised as to whether or not coercion was used in obtaining the testimony of the petitioner before the grand jury in the case at bar. It appears from the record that the witness was told by the special prosecutor, Mr. Havner, that in his opinion unless he testified before the grand jury, the grand jury would return an indictment against the witness. It also appears of record in the testimony in this case that at that time the witness had knowledge that an indictment had already been drawn up against himself, and that it was his understanding that if he testified he would not be prosecuted and no indictment would be found against him. Whether this amounted to duress or coercion within the meaning of the law we do not find it necessary to determine in the view we take of the case. It is the contention of respondent that the witness waived his privilege when he testified before the grand jury, and for the purpose of the determination of this question it will be assumed that there was no duress or coercion, and that the witness voluntarily appeared and gave testimony before the grand jury. Much is said in argument to the effect that the witness was the prosecuting attorney and a lawyer and knew his legal rights, and having testified before the grand jury, and the testimony thus given being a part of the basis supporting the indictment returned, that he should not now be permitted to claim his privilege. We know of no principle of law that would permit us to lay down a rule which would be specially applicable to lawyers, in so far as the question of waiver of the privilege to claim immunity from testifying is concerned. That any witness, lawyer or layman, may waive this personal privilege, either before the grand jury or in the trial of a case in the district court or any other tribunal, is well settled by all the authorities. But having waived it before the grand jury, or before one tribunal or at one trial, does this amount to a waiver or forfeiture of the right or privilege to claim immunity before another tribunal or at a subsequent trial of the same case? The lower court, in passing upon this question, based his holding on language found in the case of State v. Van Winkle, 80 Iowa 15, 45 N. W. 388, 390, and in the case of State v. Knight, 204 Iowa 819, 216 N. W. 104. We quote from the language of the trial court:

"It seems to me that the case of the State v. Van Winkle, 80 Iowa 15, 45 N. W. 388, and the case of the State v. Knight (204 Iowa 819) 216 N. W. 104 cited by the State are directly in point upon the question involved in the privilege claimed by the witness. Both of these cases hold that where the witness appeared before the grand jury that he had waived the right to refuse to testify. * * * Under the language used in the first two cases cited it seems to me it leaves no question but what the witness has waived his right to refuse to testify, and therefore the Court refuses to grant him exemption."

By a careful reading of these two cases it will be found that the language upon which the lower court relied is pure dictum. In neither of these cases did the witness claim the privilege. The objection to the testimony was made by the defendant and not by the witness. We quote from the Van Winkle case:

"Harry Vance, jointly indicted with the defendant, was called as a witness on behalf of the state. The record shows that, after answering that he was acquainted with the defendant, he was asked if on May last he was with defendant at their house. The witness then stated: 'I want to claim my privilege, and decline to answer any question that would tend to criminate myself.' The court announced: 'The witness is not bound to testify to anything that would criminate himself;' whereupon the witness retired. Without any further proceedings intervening, the witness was recalled; whereupon defendant's attorneys objected to his testifying, because he had claimed his privilege. The court held that the privilege was personal to the witness; that the defendant could not claim it in his favor; that it appeared from the records of the court that the witness testified before the grand jury in this case, and there disclosed what he claimed to know about it, without claiming his privilege; therefore he ought not to be permitted to claim it here. These rulings are fully supported by the authorities. It has been held in some states that, when a witness gives testimony to a part of a transaction without claiming his privilege, he may be compelled to state the whole, and to submit to a full cross-examination, notwithstanding his answers tend to criminate or disgrace him. Com. v. Pratt, 126 Mass. 462. The reason for this ruling applies with greater force to a case like this. The only reason for excluding this testimony is that the witness claimed his privilege.

Had he waived his privilege, and testified, the defendant had no grounds for objecting. If his privilege was denied him wrongfully, the wrong was to the witness, and not to the defendant, and the testimony was admissible as to the defendant, though it might not thereafter be used against the witness.''

It will thus be seen that the objection upon which the court ruled was an objection made by the defendant. The court had previously ruled that the witness was not required to answer when the witness claimed the privilege. In the case of State v. Knight, 204 Iowa 819, at page 823, 216 N. W. 104, 107, we find this language:

''It is urged by the appellant that the court erred in permitting certain of the plaintiff's witnesses, on whom it was alleged abortive practices were used, to testify, over *his* objection, as to matters which exposed *them* to public disgrace and ignominy. These witnesses had previously given their testimony before the grand jury, and thereby waived the right, if any existed, to refuse to testify. It is said in State v. Rowley, 198 Iowa 613, 198 N. W. 37 [199 N. W. 369] : 'If the privilege to the witness was denied wrongfully, the wrong was to the witness, and not to this defendant.' See, also, State v. Lewis, 96 Iowa 286, 65 N. W. 295; State v. Peffers, 80 Iowa 580, 46 N. W. 662. As heretofore observed, the witnesses did not claim privilege when they testified before the grand jury, but, when placed upon the witness stand by plaintiff in the instant trial, the counsel for the defendant made the objection on their behalf. They asked no protection. The privilege in question was for the witnesses to exercise, not for the counsel for the defendant. It was no part of the duty of the counsel for the defendant to advise witnesses called on behalf of the plaintiff. State v. Hardin, 144 Iowa 264, 120 N. W. 470, 138 Am. St. Rep. 292.''

Again we find that in this case the ruling was on an objection made by counsel for the defendant and not by the witness. Therefore, neither of these cases relied upon by the lower court are determinative of the question now before us, where the witness is claiming the privilege himself. The overwhelming weight of authority is contrary to the dictum of our court in these two cases.

As heretofore stated, the privilege of refusing to answer on

the ground that the answer may tend to criminate the witness may be waived by the witness. 70 C. J. section 911; State v. Hillman, 203 Iowa 1008, 213 N. W. 603; State v. Fay, 43 Iowa 651. The rule is well stated in 28 R. C. L. p. 442:

"The privilege not to give self-incriminating evidence, while absolute when claimed, may be waived by anyone entitled to invoke it. However, it is well settled that a person who has waived such privilege in one trial or proceeding is not estopped to assert it as to the same matter in a subsequent trial or proceeding, because the privilege attaches to the witness in each particular case in which he may be called on to testify, and whether or not he may claim it is to be determined without reference to what he said when testifying as a witness on some other trial, or on a former trial of the same case, and without reference to his declarations at some other time or place."

In the case of Georgia Railroad & Banking Co. v. Lybrend, 99 Ga. 421, 27 S. E. 794, at page 800, the court said:

"In arguing the case here, counsel for the company, recognizing the general rule upon this subject, contended that it should not have been applied in Lybrend's favor at the last trial of this case because at a previous trial he had voluntarily testified as to the very matters concerning which he now chose to remain silent; in other words, that, having once waived his privilege, the waiver was binding upon him until the case was finally at an end. We cannot concur in this view. The fact that Lybrend had made the waiver at a former hearing before a different jury, and under circumstances necessarily, to a greater or less extent, unlike those surrounding the last trial, did not preclude him from exercising his privilege at a later stage of the case. He may on one occasion have had reasons for speaking out which were entirely satisfactory to himself; and on the next he may have been influenced to keep silent by other reasons which were, in his opinion, equally cogent. These were matters for himself alone to determine. The privilege is in the highest degree personal, and is a sacred one, which the courts should jealously guard. This case, as to this point, is widely different and easily distinguishable from that line of cases, practically without limit as to number, in which it has been held that, if one on trial for crime chooses to testify in his own behalf, he must,

on cross-examination, answer all pertinent questions, no matter if his answers do tend to criminate him. * * * It has, it is true, been very justly held that if a witness, being fully aware of his right to maintain silence, nevertheless voluntarily enters upon a partial disclosure concerning matters as to which he could claim his privilege, he will be deemed to have waived it, and may be compelled, by a rigid cross-examination, to disclose the whole truth regarding such matters. The reason of this rule is that a witness cannot arbitrarily in part waive and in part reserve his privilege, for the purpose of becoming a partisan in the case, revealing only so much of the truth as will benefit one of the parties, and asserting his privilege when interrogated as to facts which would cut the other way. In other words, if he elects to testify as to a given matter he will, in the interest of justice and of right, be compelled to disclose the whole, and not a part only, of the truth. There is, however, no necessity or reason for extending this rule to cover a case where a witness voluntarily testifies as to privileged matters upon one trial, and subsequently, at a second and entirely different trial, claims his privilege of giving no testimony whatever in regard thereto. The second trial is a de novo investigation before another jury, whose duty it is to consider the case in the light only of the evidence adduced at that hearing, and to allow the witness to assert his privilege could result in no undue advantage or injustice to either party to the cause.''

Also, in the case of Emery v. State, 101 Wis. 627, 78 N. W. 145, at page 152, the court said:

''The refusal to answer was properly sustained in any way it may be considered. The evidence, as indicated, tended to incriminate the witnesses. They had a right to refuse to answer on that ground, even though the matter was material to the case in the absence of a previous waiver of their privilege, either expressly or by testifying on the subject. As indicated, the subject of the relations between Emma Houston and her father had not been testified to by either of them on the trial. The fact that Emma testified on the subject on a former trial, whether in ignorance of her constitutional right or otherwise, did not preclude her from asserting her privilege on this trial. True, there are authorities both ways on this subject, but this court is free, so far as being bound by any previous decision, to

adopt its own view of the intent of the constitution. It was designed to preserve a valuable common-law right as it had theretofore existed, which was well defined and extended to immunity from giving self-incriminating evidence on a trial unless the privilege of such immunity were waived by the witness. The fact that a witness made previous self-incriminating statements in court on some other trial, or out of court, made no difference, the immunity was complete unless waived by the witness with knowledge of his rights. That right exists under our system by constitutional guaranty to the fullest extent, and is to be protected as rigidly and fairly as any other constitutional right and not to be weakened or impaired by inventing new methods or ways of evading it."

The general rule is laid down very tersely by Wigmore in his work on Evidence (section 2276, p. 3158), wherein the author says:

"The waiver involved in the accused taking the stand is limited to the particular proceeding in which he thus volunteers testimony. His voluntary testimony before a coroner's inquest or a grand jury or other preliminary and separate proceeding is therefore not a waiver for the main trial; nor is his testimony at a first trial a waiver for later trial."

This statement of Wigmore is supported by the great weight of authority. See Emery v. State, 101 Wis. 627, 78 N. W. 145; Overend v. Superior Court, 131 Cal. 280, 63 P. 372; State v. Burrell, 27 Mont. 282, 70 P. 982; Temple v. Com., 75 Va. 892; Cullen v. Com., 24 Grat. (65 Va.) 624; In re Mark, 146 Mich. 714, 110 N. W. 61; Samuel v. People, 164 Ill. 379, 45 N. E. 728; Georgia R., etc., Co. v. Lybrend, 99 Ga. 421, 27 S. E. 794; Miskimmins v. Shaver, 8 Wyo. 392, 58 P. 411, 49 L. R. A. 831; Boston Marine Ins. Co. v. Slocovitch, 55 N. Y. Super. Ct. 452, 14 N. Y. St. Rep. 718; Cullinan v. Quinn, 95 App. Div. 492, 88 N. Y. S. 963; Com. v. Phoenix Hotel Co., 157 Ky. 180, 162 S. W. 823; State v. Lloyd, 152 Wis. 24, 139 N. W. 514, Ann. Cas. 1914C, 415; Ex parte Wilson, 39 Tex. Cr. R. 630, 47 S. W. 996; People v. Cassidy, 213 N. Y. 388, 107 N. E. 713, Ann. Cas. 1916C, 1009. This last case has an extended note on the subject. There is also an extended note in 75 Am. St. Rep. 343; 70 C. J. section 912.

1364

It will thus be seen that the almost universal holding is to the contrary of the dictum relied upon by the trial court in support of his ruling, and we have been unable to find any case, where the question was squarely before the court, which supports the contention of the respondent that the witness having testified voluntarily before the grand jury thereby waived his privilege to claim immunity in testifying at the hearing of the trial in the district court. The only possible basis for such a holding would be on the theory that the trial of the case in court was a continuation of the investigation begun in the grand jury room and was a part of the same matter, and having testified once in the same case he could not later claim the privilege. But this basis is not sound in principle. The hearing before the grand jury is secret ex parte. What is said there the public is not privileged to hear. That is of an entirely different nature than a public trial in open court.

In line with the great overwhelming weight of authority, we therefore hold that the trial court in this instance acted illegally, and the writ of certiorari should be and is sustained.— Writ sustained.

DONEGAN, C. J., and all Justices concur.