**STATE of Iowa, Appellee,**

v.

**Richard Kaye FLAUCHER, Appellant.**

**No. 56301.**

Supreme Court of Iowa.

Nov. 13, 1974.

Larry J. Conmey, Anamosa, for appellant.

Richard C. Turner, Atty. Gen., Fred M. Haskins, Asst. Atty. Gen., and David M. Remley, County Atty., for appellee.

LeGRAND, Justice.

Defendant seeks to reverse the judgment imposed upon him following his conviction of operating a motor vehicle while under the influence of an alcoholic beverage. § 321.281, The Code. We affirm the trial court.

The issues presented are as follows: (1) error in permitting the testimony of Dr. Aaron Randolph over defendant's timely objection that the evidence was privileged under § 622.10, The Code, and in admitting certain inculpatory statements made involuntarily to the doctor; and (2) error in overruling defendant's motion for directed verdict.

I. Dr. Randolph withdrew a blood sample from defendant for test purposes. Defendant asserts a doctor-patient relationship existed and that the doctor's testimony as to statements made and facts disclosed by him should have been excluded under the provisions of § 622.10, The Code. For the reasons stated in State v. Bedel, 193 N.W.2d 121, 124 (Iowa 1974), we hold defendant has failed to show a doctor-patient relationship. See State v. District Court, 218 N.W.2d 641, 643, 644 (Iowa 1974) for limitations on the testimony when a blood

sample is taken by a doctor from one who is his patient.

█ Furthermore, we bellieve defendant would have waived any privilege as to statements made to, or demonstrations performed for, Dr. Randolph while a blood sample was being withdrawn and also shortly thereafter. These events took place in the presence of police officers, the very ones who had themselves interrogated defendant a short time earlier.

█ It is generally held that information given in the presence of third parties who are not within the scope of the privilege destroys the confidential nature of the disclosures and renders them admissible. State v. Tornquist, 254 Iowa 1135, 1155, 120 N.W.2d 483, 495 (1963); State v. Knight, 204 Iowa 819, 827, 216 N.W. 104, 108 (1927). Defendant is not entitled to the protection of § 622.10 under this record.

II. Defendant also asserts certain statements made by him to Dr. Randolph should have been excluded because they are not shown to have been voluntarily made. He bases this entirely on his claim the Miranda warnings were not given prior to his conversation with the doctor. See Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). In doing so he leans heavily on our recent decision in State v. Cullison, 215 N.W.2d 309 (Iowa 1974). We find important differences between the circumstances of the present case and those present in State v. Cullison, supra.

█ Defendant's attack on the trial court's ruling rests on the rationale that Dr. Randolph, like the polygraph operator in State v. Cullison, was acting for the police and that the questioning was official, rather than private, interrogation. It is true Dr. Randolph was armed with a series of questions furnished by the officers to be posed to defendant. It is true, too, our opinion in *Cullison* leaves no doubt that law enforcement officials may not elicit incriminating statements through questioning by a seemingly disinterested third party without affording the same protection as if the interrogation had been by the police themselves.

█ Ordinarily the role played by Dr. Randolph would present serious problems, but the circumstances do not permit an application of that rule on the only basis urged by defendant—absence of Miranda warnings prior to his encounter with the doctor. We relate briefly what the record discloses in this regard. For present purposes defendant insists the doctor was *not* his physician, a position contrary to the one he assumed in Division I hereof. Even if we accept the validity of defendant's premise, he cannot prevail under the existing facts.

The total time from defendant's arrest until the events now complained of was about two hours. In that period he was given the Miranda warnings twice, once by Officer Seeley at the time of his arrest, and again when Officer Rohlena saw him at the police station. Very shortly thereafter the doctor arrived and the conversation to which defendant objects occurred. We do not believe defendant was entitled to the Miranda warnings a *third* time in the short period of time involved here. See State v. Cooper, 217 N.W.2d 589, 597 (Iowa 1974) and State v. Davis, 261 Iowa 1351, 1354, 157 N.W.2d 907, 909 (1968).

Nor can we agree with defendant's insistence that this case is on all fours with *Cullison*, supra. In the first place, the information given Dr. Randolph was not significantly different from that already furnished to both police officers.

More important, however, defendant's conversation with Dr. Randolph, unlike the polygraph examination in *Cullison*, was not private but was conducted in the presence of the same officers who had just finished interrogating defendant. We cannot accept defendant's argument his statements to Dr. Randolph were inadmissible as having been involuntarily made because the Miranda warnings were not again recited to him.

Without in any way retreating from what we said in *Cullison*, we hold the facts in this case do not bring it within the rule announced there.

III. We find no merit in defendant's third argument either. Defendant submitted to a blood test. The results were not introduced in evidence for reasons which are not readily apparent, although there is some colloquy in the record suggesting a witness whose testimony was considered necessary to establish foundation facts was not available at the time of trial. Defendant says the failure to introduce the blood test results violates the best evidence rule. We know of no authority which compels the State to use the results of the blood test as part of its proof.

The State, of course, could not suppress the blood analysis because it was favorable to defendant, but no such claim is made. State v. Peterson, 219 N.W.2d 665, 674 (Iowa 1974); State v. Houston, 209 N.W.2d 42, 47 (Iowa 1973).

In any event the best evidence rule is not applicable to the present facts. See U. S. Homes, Inc. v. Yates, 174 N.W.2d 402, 403–404 (Iowa 1970), where we quoted this with approval from 29 Am.Jur.2d Evidence § 448, pages 508–509 (1967):

" * * * This [best evidence] rule does not purport to include the substitution of weaker for stronger evidence, which any litigant has a right to decide for himself; it only comprehends a situation where the evidence offered is clearly substitutionary in its nature, although directed to the same issue as the original evidence which is withheld."

See also McCormick on Evidence, 2d Ed., § 229, pages 559–560 (1972).

The State here simply used what defendant characterizes as weaker evidence (the testimony of police officers and the doctor) instead of—according to him—the stronger (blood analysis). The best evidence rule is not involved.

IV. We find no merit to any of the objections asserted by defendant and the judgment is accordingly affirmed.

Affirmed.

MOORE, C. J., and UHLENHOPP, REYNOLDSON, HARRIS and McCORMICK, JJ., concur.

RAWLINGS and MASON, JJ., dissent.

REES, J., takes no part.

RAWLINGS, Justice (dissenting).

It is impossible for me to so readily distinguish this case from State v. Cullison, 215 N.W.2d 309 (Iowa 1974), as does the majority. I also submit the situation here presented is aggravated by the admitted fact that Dr. Randolph was parroting questions submitted to him by police officers in attendance. Additionally, these were the same questions defendant refused to answer when previously interrogated by the same policemen.

Moreover, time of giving the Miranda warnings to defendant is not here of the essence. The setting changed entirely when Dr. Randolph, for some unknown reason, accepted the invitation to shift from his traditional role of a medical practitioner to that of a law enforcement officer, a change totally unknown to defendant. And having elected to act in that guise, Dr. Randolph, of all people, should have given or had the Miranda warnings given to defendant prior to the solicited questioning of him by the doctor. By the same token Dr. Randolph should have ascertained such warnings were fully understood and attendant rights knowingly waived by defendant before undertaking the instantly involved interrogation.

With regard to the foregoing see State v. Cullison, 215 N.W.2d at 314–315; Commonwealth v. Bordner, 432 Pa. 405, 247 A.2d 612, 616–618 (1968).

I would reverse.

MASON, J., joins in this dissent.