**STATE of Iowa, Appellee,**

v.

**Albert PARHAM, Appellant.**

No. 55175.

Supreme Court of Iowa.

July 31, 1974.

Charles T. Mattson, Waterloo, for appellant.

Richard C. Turner, Atty. Gen., Stephen T. Moore, Asst. Atty. Gen., Robert Rausch, County Atty., for appellee.

Heard before MOORE, C. J., and MASON, REES, REYNOLDSON and McCORMICK, JJ.

MASON, Justice.

The attendant of a Vickers Service Station located in Waterloo was robbed at gun point by a young woman at approximately 3 a.m. October 13, 1970. Although defendant, Albert Parham, did not actually participate in the holdup he was charged and tried under the aiding and abetting provisions of section 688.1, The Code. He appeals from judgment following his conviction by a jury of robbery with aggravation.

The young woman who perpetrated the robbery used a revolver in accomplishing the offense. She was later identified as LuAnn Kingland. Miss Kingland asked the lone attendant for change and then pointed a revolver at him and demanded all the money in the cash register. After taking the money and ordering the attendant into a back room of the station she fled. The attendant heard a car start and drive away and shortly thereafter he notified the police. A short time later Waterloo police stopped a car carrying Miss Kingland and four others, defendant Parham, Terry McDonald, Judy Nootenboom and Ben Crawford.

Miss Kingland, who was earlier convicted of robbery growing out of this incident and was serving her sentence at the Women's Reformatory in Rockwell City, testified for the State concerning the circumstances leading up to and following the robbery. She stated defendant gave her the revolver used in the robbery, suggested robbing the Vickers station and instigated the counting of the money. Miss Nootenboom, age 15, also testified about the activities of the principals leading up to the robbery. She stated defendant suggested robbing a station with only one attendant and that a girl should actually perform the robbery. She further stated defendant. along with McDonald, told Kingland to start counting the money.

Both Kingland and Nootenboom had taken various drugs in the past; Kingland had often used heroin. The two girls traveled to Waterloo from Des Moines on October 10 at which time Kingland was taking morphine. Some time after arriving in Waterloo she apparently obtained a quantity of heroin. In the late afternoon of Monday, October 12, she took this heroin while in the company of Terry McDonald.

The evening of the robbery the two girls visited several bars before meeting defendant and McDonald in Rory's. At Rory's

McDonald purchased at least one drink for each of the girls. Later this group, along with Ben Crawford, went to the Music Box where service was refused the girls because they were not 21 years of age, the legal age for drinking at that time; however, defendant and McDonald gave them part of their drinks. Thereafter, all of them went to the Blue Note and stayed there until it closed at 2 a.m. The next hour the group rode around in Crawford's car; the robbery took place about 3 a.m.

Kingland also stated there was marijuana in the car at this time and everyone was smoking some. Miss Nootenboom testified McDonald had some marijuana and they all smoked some prior to the robbery. Officer Barker testified he found a small plastic bag of marijuana at the scene of the arrest.

At the close of the State's evidence and before presentation of defense testimony defense counsel informed the court Terry McDonald would be called as a witness. McDonald had pleaded guilty to robbery in connection with this same incident but had not yet been sentenced at the time of trial. Counsel for McDonald informed the court McDonald would claim his privilege not to testify upon the grounds that to do so would tend to incriminate him or expose him to public ignominy. Defense counsel argued McDonald could no longer incriminate himself because he had already been convicted of robbery and therefore he should be made to testify concerning the events leading up to the robbery. The trial court ruled it had no authority to require the witness to testify. The foregoing proceedings were had in chambers.

When the trial returned to open court McDonald who had been subpoenaed to testify on behalf of defendant was sworn as a witness. He gave his name and stated he was in the Black Hawk County jail but refused to respond to any other questions propounded by the defense because of the incriminating nature of his proposed testimony. The trial court gave counsel further opportunity to be heard on the matter which they rejected. The court then sustained McDonald's refusal to answer on the ground the witness had raised his privilege against self-incrimination guaranteed under amendment 5 of the United States Constitution and section 622.14, The Code, and the witness was excused.

Defendant contends in a single assignment the trial court erred in sustaining McDonald's refusal to testify by assertion of the privilege against self-incrimination.

I. It is defendant's position that he was denied his right to a fair trial under due process of law when the trial court sustained McDonald's claim of privilege against self-incrimination. His basic argument is a witness cannot assert his privilege against self-incrimination when he no longer is subject to prosecution for the crime or crimes his testimony might involve.

The record discloses that during the proceedings had in chambers defense counsel maintained McDonald could not incriminate himself any more than he already had by his plea of guilty to the charge of robbery. Counsel informed the court he would attempt to limit the scope of his questioning to the events which occurred that evening and specifically to the question of defendant's participation in the crime.

At this stage McDonald's counsel advised the court McDonald's concern was not only the present robbery charge to which he had pled guilty but also the fact his testimony might lead to additional charges being filed against him which had not been included in the robbery charge. Counsel also pointed out McDonald was concerned about the possibility of a parole.

In reply defense counsel advised the court he did not desire to question McDonald on other crimes which occurred that evening but merely with regard to the activities which led to the crime charged and defendant's participation therein.

Testimony elicited from other witnesses showed other crimes may have been committed during the evening hours preceding the holdup. Two witnesses stated all members of the group, including McDonald, were smoking marijuana; Nootenboom stated the marijuana was McDonald's. As noted above, a small packet of marijuana was found at the scene by Officer Barker. Kingland also testified McDonald was present when she took heroin. The record also shows testimony by the two girls that McDonald both purchased and made available for them alcoholic beverages. Kingland was 20 at the time and as pointed out Nootenboom was 15. This occurred in 1970 when, as stated, the legal drinking age in Iowa was 21. Possession of marijuana is a crime in Iowa.

■ Amendment 5 of the federal constitution provides in part that "No person * * * shall be compelled in any criminal case to be a witness against himself." Protections of this self-incrimination clause are absorbed in amendment 14. Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653; Spevac v. Klein, 385 U.S. 511, 87 S.Ct. 625, 17 L.Ed.2d 574. In other words, these decisions make amendment 5 applicable to the states. The privilege of one not an accused is a privilege to be free from legal coercion imposed to compel an incriminating response which may be put to the individual and extends to a witness in a criminal proceeding. It is a privilege to decline to respond to inquiries, not a prohibition against inquiries designed to elicit responses incriminating in nature. McCormick on Evidence (Second Ed.) sections 135–136.

The standard applicable in determining if the privilege is properly asserted is set out in Hoffman v. United States, 341 U.S. 479, 486–487, 71 S.Ct. 814, 818, 95 L.Ed. 1118:

"The privilege afforded not only extends to answers that would in themselves support a conviction * * * but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant * * *. [citing authorities]. But this protection must be confined to instances where the witness has reasonable cause to apprehend danger from a direct answer. * * * [citing authority] The witness is not exonerated from answering merely because he declares that in so doing he would incriminate himself—his say-so does not of itself establish the hazard of incrimination. It is for the court to say whether his silence is justified, * * * [citing authority], and to require him to answer if 'it clearly appears to the court that he is mistaken.' * * * [citing authority]. However, if the witness, upon interposing his claim, were required to prove the hazard in the sense in which a claim is usually required to be established in court, he would be compelled to surrender the very protection which the privilege is designed to guarantee. To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result."

■ This federal standard applies in a prosecution by a state in determining whether the privilege is properly asserted. Malloy v. Hogan, 378 U.S. at 14, 84 S.Ct. at 1497, 12 L.Ed.2d at 662. The power to decide if the witness may assert his privilege against self-incrimination is thus vested in the trial court to be exercised in its sound discretion under all the circumstances then present. Malloy v. Hogan.

The principle pertinent to the present problem is well expressed in State v. Parker, 79 Wash.2d 326, 331, 485 P.2d 60, 63, in this manner:

"But the asserted hazard of self-incrimination must appear to be genuine; if fanciful or illusory, the claim of immunity should be rejected as insufficient to overcome the correlative duty to the court and litigants to testify to the truth. This

means that the power to decide whether the hazards of self-incrimination are genuine and not merely illusory, speculative, contrived or false, must rest with the trial court before whom the witness is called to give evidence. The power to decide whether the witness shall be immune from answering certain questions put to him on the ground that the answers will incriminate him is thus vested in the trial court to be exercised in its sound discretion under all of the circumstances then present. * * * [citing authorities]."

 Basically, a witness may not claim his fifth amendment privilege unless he has reasonable cause to apprehend danger from a direct answer. Hoffman v. United States, 341 U.S. at 486–487, 71 S. Ct. at 818, 95 L.Ed. at 1124; United States v. Seewald, 450 F.2d 1159, 1163 (2 Cir. 1971). If an answer may directly incriminate the witness the privilege is properly asserted. Furthermore, it is properly asserted where the answer might furnish a link in the chain of evidence needed to prosecute a crime. Hoffman v. United States, supra; United States v. Chandler, 380 F.2d 993, 997 (2 Cir. 1967); United States v. Llanes, 398 F.2d 880, 884–885 (2 Cir. 1968), cert. den., 393 U.S. 1032, 89 S. Ct. 647, 21 L.Ed.2d 576; United States v. Ward, 314 F.Supp. 261, 264 (E.D.La.1970).

In support of his basic argument stated earlier defendant insists one of the most fundamental rules concerning the privilege against self-incrimination is that if the requested testimony can no longer subject the witness to a criminal prosecution the danger which is the sole concern of the privilege comes to an end. Once the reason for the privilege ceases, the privilege ceases. From this defendant argues McDonald's plea of guilty to robbery was tantamount to a conviction and nothing remained but to pronounce judgment imposing sentence. The prosecution was over and no statement could further incriminate McDonald.

Defendant cites and leans heavily on citations from various jurisdictions which recognize, to some extent at least, the rule that a plea of guilty waives the privilege against self-incrimination, all of which are collected in the annotation in 9 A.L.R.3d 990 and the 1973 supplement thereto. As demonstrated by the author of the annotation the authorities on the question as to whether a witness waives his privilege against self-incrimination at the time of acceptance of a guilty plea or at the time of judgment pronouncing sentence thereon are divided. See also McCormick on Evidence (Second Ed.) section 121 n. 84 where more cases bearing on the question are collected.

 In entering a plea of guilty a defendant admits all the elements of the crime with which he has been charged and thereby waives several of his constitutional rights, including his privilege against compulsory self-incrimination. McCarthy v. United States, 394 U.S. 459, 466, 89 S.Ct. 1166, 1171, 22 L.Ed.2d 418, 425; Boykin v. Alabama, 395 U.S. 238, 243, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274, 279; State v. Delano, 161 N.W.2d 66, 72–73 (Iowa 1968); State v. Kobrock, 213 N.W.2d 481, 483 (Iowa 1973).

In our opinion defendant's contentions miss the mark. Neither *McCarthy* nor *Boykin* indicate that the waiver referred to in those decisions extends beyond that which is necessary for the plea itself.

The editor of the annotation in 9 A.L.R. 3d at 1003–1004 cautions that the privilege, if lost after a conviction, is lost only to the crime for which the conviction was obtained and the courts are circumspect in preserving the privilege where there is the possibility of conviction for other offenses. In other words, these principles apply to a witness testifying about the crime for which he has pled guilty; a witness does not waive his privilege as to other crimes, however, by a plea of guilty to a different offense. If testimony could incriminate the witness as to other crimes, he may properly assert his privilege.

By pleading guilty to the crime of robbery McDonald necessarily admitted the essential elements of that offense which the State had the burden to prove beyond a reasonable doubt in order to sustain a conviction thereof: (1) that defendant wrongfully took and carried away money in some amount belonging to another; (2) that such taking was with the felonious intent of defendant to convert such money to his own use; (3) that such money was taken from the person of Roger Bishop, the lone attendant of Vickers Service Station; (4) that such taking was with force or violence or that such taking was by putting Roger Bishop in fear; and (5) that defendant did so on or about the 13th day of October 1970 in Black Hawk County, Iowa.

McDonald did not admit to possession of marijuana or that he furnished the same to Kingland and Nootenboom nor did he admit providing these underage females with intoxicating liquor, offenses for which he then remained subject to prosecution in the Black Hawk court.

None of the authorities cited by defendant hold that the witness' waiver of his fifth amendment privilege by pleading guilty to the offense of robbery extends any further than to the facts actually admitted by his plea of guilty—to those facts which were essential elements of the offense with which he had been charged.

■ Although McDonald had entered a plea of guilty to the charge of robbery stemming from the very incident which gave rise to the charge for which defendant was then on trial and presumably could not be twice put in jeopardy for the precise offense of robbery, there were other circumstances present to support the exercise of judicial discretion in upholding McDonald's claim of fifth amendment immunity.

The issue thus resolves itself down to whether in sustaining the claim of likely self-incrimination the trial court abused its discretion. After hearing testimony of Kingland and Nootenboom and the claim of McDonald through his counsel that McDonald was concerned his testimony might lead to additional charges being filed against him which had not been included in the robbery charge and being expressly advised during the proceedings in chambers by defendant's counsel that he desired to question McDonald in regard to activities that led up to the holdup, the court's sound discretion as to the validity of the claim was invoked.

We find no abuse of the trial court's exercise of a sound discretion in sustaining McDonald's claim of privilege and declining to compel him to answer questions to which he claimed the privilege.

■ II. Defendant for the first time argues in this court that the trial court's ruling in allowing a "blanket" assertion of the privilege by McDonald was error. Examination of the record discloses that this contention was not urged in the trial court. Thus, it presents nothing for review in this court. However, this is not to be taken as an indication such procedure is approved by this court. "Since the privilege is applicable only as the specific response would come within the scope of protection and the witness is not the ultimate arbiter of whether this is the situation, a decision on the propriety of invoking it cannot be made unless the question has been put and the witness has asserted his basis for refusal to answer." McCormick on Evidence (Second Ed.) section 136. The author makes us aware this procedure endangers to some extent the values which the privilege is designed to protect.

III. There remains to be considered defendant's contention he was denied a fair trial under due process of law when the trial court sustained McDonald's claim of privilege against self-incrimination.

■ Defendant does not specifically mention his right guaranteed by amendment 6 of the federal constitution "to have compulsory process for obtaining witnesses in his favor," a right made obligatory on

the states by amendment 14. Washington v. State of Texas, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019. Nevertheless, we presume this is the basis of his claim.

A similar contention was asserted and rejected in Holloway v. Wolff, 351 F.Supp. 1033, 1037–1038 (D.Neb.1972), where the court said:

"When the Sixth Amendment and Fifth Amendment guarantees collide under these circumstances, the Sixth Amendment right must yield. To require one defendant to incriminate himself in order to afford help to another would be both unwise and un-realistic."

Defendant was not denied due process in any of the respects urged.

The case is therefore

Affirmed.