STATE of Iowa, Appellee,

v.

Michael Lee KELLOGG, Appellant.

No. 84–1829.

Supreme Court of Iowa.

April 16, 1986.

As Corrected May 1, 1986.

Charles L. Harrington, Appellate Defender, and John P. Messina, Asst. Appellate Defender, for appellant.

Thomas J. Miller, Atty. Gen., Pamela Greenman Dahl, Asst. Atty. Gen., James A. Smith, Co. Atty., and Mark Feldmann, Asst. Co. Atty., for appellee.

LARSON, Justice.

Michael Lee Kellogg was convicted of first-degree murder. Iowa Code §§ 707.1, 707.2 (1983). On appeal, he claims the trial court erred in (1) admitting a pretrial depo-

sition of a State's witness; and (2) instructing the jury that the witness was an accomplice as a matter of law. We affirm.

The victim, Jerry Lee Snyder, was killed in the early morning of February 23, 1984. His body was discovered later that day on a dirt road in a secluded area of Des Moines. Examination of the body revealed that he had died from multiple gunshot wounds to the head and upper body.

The police investigation immediately concentrated on Lois Walker and the defendant, because they were the last persons seen with the victim. As a result of this investigation, the defendant was charged with murder. In preparing for trial, Kellogg's lawyer took the deposition of Walker who, Kellogg claims, actually killed the victim. At the time Walker gave her deposition, she had not been charged with a crime, and she did not have an attorney present with her.

In her deposition, Walker testified that, on the day immediately preceding the killing, she discovered that the victim was carrying cash. She told Kellogg about it, and Kellogg told her he planned to "roll and rob" him. The three visited several bars together then got into Kellogg's car. Kellogg was driving; Walker was in the passenger seat; and the victim was alone in the back seat. After driving for some time, Kellogg asked Walker to hand him the revolver from the glove compartment. According to her, she handed the revolver to Kellogg, who then began shooting at the victim in the back seat.

After Kellogg emptied the revolver, he reloaded the gun and fired several more rounds. Walker testified she steered the car while Kellogg reloaded. They drove to a dirt road where Kellogg pulled the victim from the vehicle and fired several more shots at him. The two drove away but returned shortly to remove the victim's wallet. Kellogg and Walker drove to a friend's house where they cleaned out the back seat of the car. According to Walker's deposition, they then went to a local grill and from there to Kellogg's apartment where they spent the night.

After the deposition of Walker revealed the extent to which she had been involved in the incident, she was charged with first-degree robbery.

Walker's deposition testimony was corroborated by other evidence at the trial. Another witness, for example, confirmed the fact that Walker and Kellogg had stopped at her house to clean out the car. This witness also testified that Kellogg washed blood off his hands at that time.

Other independent evidence revealed that the murder weapon belonged to Kellogg and that the victim had been shot in the back of Kellogg's car. Kellogg admitted to a witness having fired the gun on the night of the killing. There was also evidence that he fled from the police when they tried to question him about the murder. Shortly after the defendant's arrest, the victim's wallet was found in the area where the defendant fled from the police.

I. *The Use of the Pretrial Deposition.*

After Walker was charged with robbery, an attorney was appointed for her. Her attorney immediately informed the county attorney's office that Walker would not provide any further evidence in the case against Kellogg, based upon her fifth amendment privilege.

The State then sought permission to use Walker's deposition at trial on the ground that, because she had exercised her privilege, she was "unavailable" to testify in person. *See* Iowa R.Evid. 804(b)(1). That rule provides:

*Hearsay exceptions.* The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

(1) *Former testimony.* Testimony given as a witness at another trial or hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testi-

mony by direct, cross, or redirect examination.

Pursuant to this application, the court found that Walker was unavailable and entered an order allowing the State to use her deposition at the defendant's trial. The defendant objected on the ground this would deny him a fair trial and would violate his sixth and fourteenth amendment rights to confront the witness.

In *Barber v. Page*, 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968), the Supreme Court discussed the use of out-of-court statements and their effect on a defendant's constitutional rights. In that case, the Court said that the primary object of the confrontation clause

> was to prevent depositions or ex parte affidavits ... being used against the prisoner in lieu of a personal examination and cross-examination of the witness in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief.

*Id.* at 721, 88 S.Ct. at 1320, 20 L.Ed.2d at 258 (quoting *Mattox v. United States*, 156 U.S. 237, 242–43, 15 S.Ct. 337, 339, 39 L.Ed. 409, 411 (1895)).

The *Barber* case suggests a two-pronged test for using out-of-court statements by a witness: (1) Is the witness unavailable to testify at trial; and (2) if the witness is unavailable, has the State made every reasonable effort to secure the attendance of the witness? *Id.* 390 U.S. at 724–25, 88 S.Ct. at 1319–20, 20 L.Ed.2d at 260.

■ A witness who has exercised a fifth amendment privilege is "unavailable" for purposes of the confrontation clause. *See United States v. Inadi*, — U.S. —, —, 106 S.Ct. 1121, 1127, 89 L.Ed.2d 390, 399 (1986); *California v. Green*, 399 U.S. 149, 167–68, 90 S.Ct. 1930, 1940, 26 L.Ed.2d 489, 502 (1970); *Phillips v. Wyrick*, 558 F.2d 489, 494 (8th Cir.1977). The exercise

of a witness' fifth amendment privilege also makes that witness "unavailable" for purposes of our evidence rule 804(b)(1). *See* Iowa R.Evid. 804(a)(1).

Kellogg does not challenge this general principle of law. He contends, however, that any privilege Walker might have originally had available to her had been waived. She was therefore available for purposes of the confrontation clause and our rule of evidence. This is so, he argues, because, when she gave incriminating evidence at her deposition, this amounted to a waiver of her fifth amendment privilege which carried over into later proceedings.

■ The general rule is that a waiver of a fifth amendment privilege is limited to the particular proceeding in which the waiver occurs. *See Duckworth v. District Court*, 220 Iowa 1350, 1363, 264 N.W. 715, 721 (1936); VIII Wigmore, *Evidence* § 2276(4), at 470 (McNaughton rev. 1961); Annot., 42 A.L.R.Fed. 793, 795 (1979). *Duckworth* held that a person who had waived a fifth amendment privilege in a grand jury proceeding was not prevented from asserting it at a subsequent trial.

■ At the time Walker gave her deposition testimony, she was not charged with a crime. Nor, apparently, was any prosecution imminent. She did not have an attorney. In fact, the transcript of her deposition does not show that she was even aware that she had a privilege against self-incrimination. We cannot say she "waived" it for all future proceedings when we do not even know she was aware she had it. We are reluctant to infer a waiver of a fifth amendment privilege under any circumstances. This is especially true when a waiver is sought to be extended into future proceedings. *See United States v. Steffen*, 103 F.Supp. 415, 416 (D.C.Cal.1951).

We hold that Walker validly asserted her fifth amendment privilege and was unavailable for trial for purposes of the confrontation clause and Iowa Rule of Evidence 804(b)(1).

Kellogg has an alternative argument. He argues that the State had a duty to attempt to obtain a waiver of Walker's privilege by granting her immunity, by plea negotiations, or by some other means, as "a good faith effort to make [her] available to testify." He cites *Barber*, 390 U.S. at 724–25, 88 S.Ct. at 1322, 20 L.Ed.2d at 260, as authority for the general proposition that the State has a duty to make a reasonable effort to make the witness available.

The State correctly points out, however, that *Barber*, and other cases requiring an attempt to make a witness available, do not involve witness unavailability based on an exercise of a fifth amendment privilege. Rather, they involve witnesses who are physically absent. *See, e.g., Id.* at 725, 88 S.Ct. at 1322, 20 L.Ed.2d at 260 ("Prosecutorial authorities [must make] a good-faith effort to obtain [the witness'] presence at trial.") In the *Barber* type of case, the State is merely required to try to obtain the physical presence of the witness. In a case such as the present one, it is not such a simple matter. The State would be required to negotiate in one case in order to secure the attendance of a witness in another. We have found no cases, nor has Kellogg cited any to us, which require such efforts on the part of the State. Kellogg concedes that, as a general rule, this is true. He argues, however, that it should be the rule of this case, because Walker's testimony was so damaging, and because a personal appearance by her at the trial was so critical to his defense.

Kellogg does not contend that a personal appearance by Walker was necessary in order for him to exercise his right to cross-examination. He had already, in effect, cross-examined her at the deposition. (The deposition was read in full to the jury at Kellogg's trial.) His argument is that the jury should have been allowed to see her in person in order to assess her credibility which, he suggests, is questionable.

The opportunity of a fact finder to assess the credibility of a witness, however, is a secondary concern of the confrontation clause. While the right to cross-examination is considered to be indispensible, a fact finder's opportunity to view the demeanor of a witness is not. In *Phillips*, where a similar issue was raised, the court said:

> In evaluating the truth of a witness' statement, a jury ordinarily has occasion to weigh the demeanor of the witness. The petitioner here asserts that the introduction of the preliminary hearing testimony denied him the benefit of the demeanor evidence which he claims is an essential element of his confrontation right. Although the confrontation privilege encompasses the opportunity both for the defendant to cross-examine a witness and for the jury to observe the witness, the former is an indispensible ingredient while the latter is an incidental advantage which must sometimes give way to considerations of public policy and the necessities of the case.

558 F.2d at 495.

■ In the present case, the jury was able to assess the credibility of Walker, at least to some extent, by what she said. While the manner in which she said it and her general demeanor were not apparent, we do not believe this rises to such a level of importance that the State was required to make these concessions in order to obtain it. This is one of those situations in which the right of the jury to personally assess credibility must "give way to considerations of public policy and the necessity of the case." *Id.*

## II. *The Witness's Status as an Accomplice.*

■ The district court instructed the jury that, as a matter of law, Lois Walker was an accomplice and therefore corroborating evidence was required. We believe the trial court correctly instructed the jury on this matter. According to Walker's deposition, she had informed Kellogg about the victim's cash. She was aware that Kellogg intended to "roll and rob" the victim, and she helped lure the victim into leaving a bar with the defendant and her. Furthermore, she admitted she handed the gun to the defendant, to be used on the

victim, and even steered the car while the defendant reloaded. She also testified that she had expected to get a share of the money from the victim's wallet. She helped clean the blood and glass from Kellogg's car and made an effort to conceal the pair's involvement by initially lying to the police.

Under the circumstances, she was an accomplice as a matter of law, and the judge properly instructed the jury to that effect.

We find no error.

AFFIRMED.

All Justices concur except LAVORATO, J., who takes no part.