# IN THE SUPREME COURT OF IOWA

No. 17–1075

Filed October 11, 2019

**STATE OF IOWA,**

Appellee,

vs.

**KENNETH LEROY HEARD,**

Appellant.

---

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Polk County, Robert J. Blink, Judge.

State seeks further review of court of appeals decision ordering new trial on ground the district court erred by denying defendant's motion to compel witness to assert Fifth Amendment privilege in presence of jury. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**

Gary Dickey of Dickey & Campbell Law Firm, PLC, Des Moines, for appellant.

Thomas J. Miller, Attorney General, Louis S. Sloven, Assistant Attorney General, John P. Sarcone, County Attorney, and Thomas H. Miller and Olubunmi Salami, Assistant County Attorneys, for appellee.

**WATERMAN, Justice.**

In this appeal, we must decide whether the district court correctly refused to permit the defendant in his jury trial to call a witness who intended to invoke his Fifth Amendment privilege against self-incrimination on all questions. The defendant in his retrial for murder contends the witness fired the fatal shots and wanted the jury to hear him "take the Fifth" so that jurors would infer the witness's guilt. The district court followed our decision in *State v. Bedwell* affirming such a refusal because "the jury is not entitled to draw any inferences from the decision of a witness to exercise his constitutional privilege *whether those inferences be favorable to the prosecution or the defense.*" 417 N.W.2d 66, 69 (Iowa 1987) (quoting *Bowles v. United States*, 439 F.2d 536, 541 (D.C. Cir. 1970) (en banc)). The defendant was convicted of first-degree murder, and we transferred his appeal to the court of appeals, which reversed and ordered a new trial, distinguishing *Bedwell* on grounds the witness had testified in the defendant's prior trial and the district court failed to ascertain the scope of his privilege question by question. We granted the State's application for further review.

We hold *Bedwell* is controlling and therefore vacate the decision of the court of appeals and affirm the district court's ruling and judgment. The witness was entitled to assert a blanket Fifth Amendment privilege to refuse to answer any questions. Under these circumstances, *Bedwell* provides a categorical rule against compelling the witness to assert his Fifth Amendment privilege in front of the jury. Because the witness properly refused to testify, there was no violation of the defendant's Sixth Amendment rights of confrontation or compulsory process. We also affirm the district court's ruling denying a new trial on grounds the verdict was against the weight of the evidence, and we decline relief on the defendant's

untimely claim, raised for the first time on this appeal, that he cannot be sentenced to life without parole without a jury finding that he was an adult at the time of the offense.

## I. Background Facts and Proceedings.

A jury could find these facts from the testimony at the second trial. On the morning of December 13, 2007, Joshua "J-Hood" Hutchinson was found dead in the snow by a Des Moines apartment complex on Center Street. Hutchinson died from multiple gunshot wounds to his head, groin, limbs, and chest. The shots had been fired at close range, two to three inches from his head. Hutchinson was a member of a group named "3 in 3 out," or "Third World," that sold drugs and committed multiple robberies together. Other members included Kenneth "KQ" Heard, Marco "Juice" Brown, and Deland "DB" Stanley. Heard, then age twenty-six, was viewed as the leader. Stanley was in jail at the time but was in regular phone contact with the group.

Stanley reportedly was angry with Hutchinson for propositioning "one of his females." On December 12, Stanley asked Jacquisha Majors,[1] a friend of the group, to pick up his clothes from Hutchinson. She did so and drove Hutchinson to join Heard, Brown, and Johnetta Daye (believed to be the mother of Heard's child). They spent the day smoking marijuana and planning a robbery. At midnight, they went to Majors' house where Hutchinson fell asleep. Heard called Phillip "Self" Findley, telling him to come over because there was trouble. Heard took Findley and Brown into Majors' bathroom for privacy and told them Hutchinson was snitching to the police and planning to rob Heard.

---

[1]Majors got married before the second trial and changed her last name to Harris. We will refer to her as Majors, her name at the time of the crime.

At Heard's direction, Majors awakened Hutchinson, and all but Daye left in two cars to conduct the planned robbery. Majors drove Heard and Hutchinson, with Heard giving her turn-by-turn directions. Findley and Brown followed them. When they arrived at the apartment complex on Center Street, everyone but Majors walked to the backyard. The men gathered by a picnic table by a wooded area next to the parking lot. Hutchinson went to relieve himself. Gunshots rang out. Majors heard the shots but did not see who fired them. Findley and Brown ran to Findley's car and drove away. Heard jumped into Majors' car without Hutchinson. As Majors drove away and before asking what they did with the gun, Heard called Findley and asked, "Are you cool"? Majors drove Heard to a friend's house where she saw Heard remove a rubber glove and change clothes.

Majors then drove Heard back to her house. Findley had dropped Brown off there, where Daye remained. Brown had left the scene with the murder weapon, wiped the gun to remove fingerprints, and hid it in a shirt near his father's residence. Concerned about gunpowder residue, when Brown returned to Majors' residence he disrobed and put his clothes in a bag. Brown was quiet, and Majors saw him crying. Heard asked Majors to drive him back to the scene to ensure Hutchinson was really dead, which she refused to do. Heard told her in detail how he shot Hutchinson. Heard stayed in hotels for a few days before leaving Des Moines. Heard was arrested in Texas.

On April 4, 2008, Heard was charged with first-degree murder. He pled not guilty and proceeded to trial. Brown testified that Heard shot Hutchinson. The jury convicted Heard of first-degree murder, and he was sentenced to life in prison without parole. Heard appealed his conviction, arguing it was against the weight of the evidence because the State's witnesses were not credible. He also alleged ineffective assistance of

counsel for failing to request an instruction that accomplice testimony must be corroborated. The court of appeals affirmed his conviction on his direct appeal. *State v. Heard*, No. 09–0102, 2010 WL 2090851, at *1 (Iowa Ct. App. May 26, 2010).

Heard filed an application for postconviction relief, claiming that his trial counsel was ineffective in failing to investigate and present evidence that Brown murdered Hutchinson and in failing to present expert testimony that blood splatter would have been found on Heard's clothing had he fired the fatal shots. The district court determined that Heard's trial counsel breached an essential duty by failing to effectively cross-examine Brown and ordered a new trial.

Heard was retried for first-degree murder in 2017. Heard's theory of defense at the second trial was that Brown murdered Hutchinson at Stanley's direction. Brown left the scene of the murder with the firearm, wiped it clean, and hid it. The murder weapon belonged to Stanley, who was upset with Hutchinson for propositioning Stanley's female friend. Stanley and Brown were described as close friends who had been living together, whereas Heard and Hutchinson had been "like brothers." A witness testified Stanley told her that he could tell Brown to kill someone and he would get away with it because of Brown's mental illness. A cellmate testified he overheard Brown tell Heard that Brown knew Heard did not murder Hutchinson and should "just let [Brown] play the crazy role."

Although Brown had testified in the first trial, this time Brown asserted his Fifth Amendment privilege in a pretrial deposition and made clear he would assert the privilege and refuse to answer any questions if

called to testify in front of the jury.[2]  Heard filed a motion to compel Brown's testimony at the second trial and asserted numerous aspects of the potential testimony that would support his defense theory that Brown committed the murder.  The court allowed Brown to assert a blanket privilege of his Fifth Amendment rights to any question.  Heard nevertheless wanted Brown to "take the Fifth" in front of the jury so that jurors would infer Brown was guilty.

At the hearing on Heard's motion to compel, the judge noted the parties assumed the court had discretion whether to compel a witness to take the Fifth in front of the jury.

> I did note that you were careful to make the observation the Court is not obligated to force a witness to take the Fifth Amendment in front of a jury.  And in my practice of over 40 years in the criminal area, I think that type of discretion is wisely exercised.  I don't think it's a good idea for a Court to force a witness to take the Fifth Amendment at trial.

The district court denied Heard's motion and refused to compel Brown to testify.  The court relied on *Bedwell*'s holding that "a Defendant may not call a witness who has indicated an intent to assert his or her right against self-incrimination before a jury," noting that the jury cannot draw any inferences favorable to either side from a witness's invocation of that privilege.  The district court foresaw problems with compelling a witness to take the Fifth in the presence of the jury.

> Using the exercise of constitutional rights as a weapon, rather than a shield, is troubling.  This approach is an invitation for jurisprudential mischief in the criminal process.
>
> Were the procedure sanctioned, any defendant could subpoena any known person of disrepute and force him or her to take the Fifth.  There would be no way for the Court, or the

---

[2]The State sought to admit Brown's prior testimony from the first trial over Heard's objection.  The district court ruled Brown's prior testimony was inadmissible at the second trial because of the ineffective cross-examination by Heard's first lawyer.

> jury, to assess the relevance of such an act. It would be evidence by innuendo, untested by the adversarial process.

The court observed that "[t]he 'Perry Mason moment' of a witness 'taking the Fifth' before the jury is a misuse of that right that cannot be assuaged by a cautionary or curative instruction."

As a result, Brown never testified or asserted his constitutional privilege in front of the jury. The second jury found Heard guilty of first-degree murder, and he was again sentenced to life in prison without parole. Heard appealed, and we transferred the case to the court of appeals, which reversed Heard's conviction and found that "[t]he district court's failure to determine the extent and validity of Brown's reported assertion of his Fifth Amendment privilege on his second round of testimony resulted in a violation of Heard's right to compulsory process." The court of appeals distinguished *Bedwell* based on the "unique context of [Heard's] case" in which the witness now asserting his Fifth Amendment privilege had testified in the first trial. We granted the State's application for further review.

## II. Standard of Review.

We review decisions to admit or exclude evidence for an abuse of discretion. *State v. Russell*, 893 N.W.2d 307, 314 (Iowa 2017). "Reversal is warranted only upon showing the 'court exercise[d] its discretion on grounds or for reasons clearly untenable or to an extent clearly unreasonable.' " *State v. Alberts*, 722 N.W.2d 402, 408 (Iowa 2006) (alteration in original) (quoting *State v. Mitchell*, 568 N.W.2d 493, 497 (Iowa 1997)).

Heard's constitutional claim that his right to compulsory process was violated is reviewed de novo. *State v. Russell*, 897 N.W.2d 717, 724 (Iowa 2017). We review for abuse of discretion a ruling denying a motion

for a new trial on grounds the verdict is against the weight of the evidence. *State v. Nitcher*, 720 N.W.2d 547, 559 (Iowa 2006).

### III. Analysis.

**A. The Fifth Amendment Issue.** We must decide whether the district court erred by denying Heard's motion to compel Brown to take the witness stand and assert his Fifth Amendment privilege in front of the jury. Heard candidly acknowledges his sole purpose for that stratagem was so that jurors would infer Brown's guilt. The State argues the court of appeals decision reversing Heard's conviction conflicts with *Bedwell*'s categorical prohibition of that stratagem and conflicts with our precedent allowing proper blanket assertions of the Fifth Amendment privilege. *See State v. McDowell*, 247 N.W.2d 499, 501–02 (Iowa 1976). We agree with the State and affirm the district court's well-reasoned ruling.

We begin our analysis with the text of the Fifth Amendment. "No person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V.[3] "It is well settled that in a criminal prosecution the jury may not be instructed defendant's failure to testify could be considered an inference of guilt; furthermore, a prosecutor may not comment on defendant's failure to take the stand." *Giltner v. Stark*, 219 N.W.2d 700, 713–14 (Iowa 1974); *see also Griffin v. California*, 380 U.S. 609, 614, 85 S. Ct. 1229, 1232–33 (1965).[4] The Fifth Amendment's

---

[3]The Fifth Amendment is applicable to the states through the Fourteenth Amendment. *Malloy v. Hogan*, 378 U.S. 1, 8, 84 S. Ct. 1489, 1493–94 (1964). Even before the Fifth Amendment was incorporated to the states through the Fourteenth Amendment, Iowa courts recognized that the right was fundamental to the "general guaranty of due process of law" found in article I, section 9. *See State v. Height*, 117 Iowa 650, 659, 91 N.W. 935, 938 (1902). We decline Heard's invitation to find the Iowa Constitution provides *less* protection against self-incrimination than the Fifth Amendment.

[4]In civil cases, we allow adverse inferences to be drawn when a witness refuses to answer questions by invoking the Fifth Amendment privilege. *Giltner*, 219 N.W.2d at

protections extend to nonparty witnesses. *Ohio v. Reiner*, 532 U.S. 17, 21, 121 S. Ct. 1252, 1254 (2001) (per curiam).

"[W]hen a witness' privilege against self-incrimination under the Fifth Amendment collides with an accused's right to compulsory process under the Sixth Amendment, the latter must give way." *McDowell*, 247 N.W.2d at 500–01 (collecting cases).[5] We first address the court of appeals' conclusion that the district court erred and violated Heard's right to compulsory process by allowing Brown's blanket assertion of privilege instead of proceeding question by question in front of the jury.

The privilege against self-incrimination extends to answers that "would furnish a link in the chain of evidence needed to prosecute the claimant for a . . . crime." *Hoffman v. United States*, 341 U.S. 479, 486, 71 S. Ct. 814, 818 (1951). A witness cannot claim the privilege "unless he has reasonable cause to apprehend danger from a direct answer." *State v. Parham*, 220 N.W.2d 623, 627 (Iowa 1974). In *Parham*, we stated that *Hoffman*'s "federal standard applies in a prosecution by a state in determining whether the privilege is properly asserted." *Id.* at 626. The trial court has the discretion to decide if the witness has grounds to assert the privilege against self-incrimination and may "require [the witness] to answer if 'it clearly appears to the court that he is mistaken.'" *Hoffman*, 341 U.S. at 486, 71 S. Ct. at 818 (quoting *Temple v. Commonwealth*, 75 Va. 892, 899 (1881)); *Parham*, 220 N.W.2d at 626.

---

714–15; *see also Craig Foster Ford, Inc. v. Iowa Dep't of Transp.*, 562 N.W.2d 618, 623 (Iowa 1997) ("Such adverse inferences are not constitutionally off limits in *civil* cases.").

[5]"In all criminal prosecutions, the accused shall enjoy the right . . . to have compulsory process for obtaining witnesses in his favor . . . ." U.S. Const. amend. VI. Article I, section 10 of the Iowa Constitution grants the accused the right to "compulsory process for his witnesses." Iowa Const. art. I, § 10. Heard argues this minor textual difference supports giving defendants greater rights to compulsory process under our state constitution. We disagree and decline to apply a different analysis.

In *McDowell,* we upheld the witness's blanket assertion of the privilege against self-incrimination. Glennetta McDowell and a companion were shopping at a J.C. Penney store. 247 N.W.2d at 501. A supervisor saw the companion place merchandise in McDowell's purse and followed them out of the store. *Id.* McDowell was apprehended with unpurchased items in her purse. *Id.* She subpoenaed her companion as a witness in her criminal trial, but the witness asserted her Fifth Amendment privilege against self-incrimination "as to the whole subject matter of the case." *Id.* at 500. In other words, she asserted a blanket privilege. McDowell was found guilty, and on appeal she argued that the trial court should have examined the witness to ascertain the validity and extent of the privilege. *Id.*

On our review, we determined the witness undoubtedly was McDowell's companion at J.C. Penney, making her "implication in the incident . . . plain." *Id.* at 501. McDowell intended to question the witness about what took place at the store during the incident. *Id.* That "incident was the subject matter of the case, the corpus delicti." *Id.* at 502. Under those circumstances, we held that the trial court properly upheld the privilege as to the entire subject matter of the case. *Id.* Indeed,

> [h]ad the court compelled [the witness] to testify about what actually took place within the J. C. Penney sportswear department at the time of the incident, it would have compelled her to place herself in the center of the alleged crime.

*Id.* Given that there was no element of her testimony that would not be incriminating, we concluded the blanket assertion of privilege was appropriate.

*McDowell* is controlling. Heard gave the trial judge the specific questions he intended to ask Brown to review before the judge exercised

his discretion to allow Brown to invoke a blanket privilege against self-incrimination. The questions were aimed at impeaching Brown, which is unnecessary without his trial testimony, or at implicating Brown in the murder by placing him in the group and at the scene of the murder, which would incriminate Brown and classically support his assertion of the Fifth Amendment privilege.[6] It is well established that under these circumstances, the witness's Fifth Amendment right against self-incrimination must prevail over the defendant's Sixth Amendment right to compulsory process. *Id.* at 500–01. We hold the district court correctly ruled Brown was entitled to a blanket assertion of the privilege. *See id.*

Next we address whether Heard was entitled to force Brown to assert his Fifth Amendment privilege in front of the jury to create an inference of Brown's guilt. Because Brown would properly take the Fifth on any question put to him, *see id.* at 501, we are confronted with *Bedwell*'s prohibition on calling a witness to the stand simply to have the jury hear him invoke the privilege in order to infer his guilt, *see* 417 N.W.2d at 69. We read *McDowell* and *Bedwell* together as providing a categorical prohibition of this stratagem.

In *Bedwell*, neighbors noticed a strange vehicle parked in a nearby driveway and saw a man carrying a television out of the house while another man waited in the passenger seat. *Id.* at 67. The neighbors approached, and the man abandoned the TV and left in the vehicle. *Id.* The neighbors later identified Randall Bedwell as the individual they saw attempting to take the TV. *Id.* at 67–68. At trial, Bedwell's defense was that his companion entered the home and removed the TV while Bedwell's

---

[6]Heard submitted seventy-seven questions, some with multiple subparts. The questions involved Brown's criminal history, the activities and relationships of the members of 3 in 3 out, and Brown's history of mental illness.

role was limited to driving the getaway vehicle. *Id.* at 68. Bedwell wanted to call his companion to the witness stand, but the companion, through counsel, claimed his Fifth Amendment privilege against self-incrimination. *Id.* at 69.

The district court concluded Bedwell could not call his companion as a witness for the sole purpose of asserting his Fifth Amendment privilege against self-incrimination in the presence of the jury. *Id.* Bedwell appealed, arguing there was no "restriction against a defendant calling a witness who has predetermined to invoke the privilege." *Id.* We disagreed. We held that the trial court properly refused to allow Bedwell to call the witness because "the jury is not entitled to draw any inferences from the decision of a witness to exercise his constitutional privilege *whether those inferences be favorable to the prosecution or the defense.*" *Id.* (quoting *Bowles*, 439 F.2d at 541). Our *Bedwell* decision adopted the United States Court of Appeals for the D.C. Circuit's opinion in *Bowles. Id.*

Daniel Bowles was on trial for the murder of a soldier found dead in an alley, and he presented a defense that another individual, Smith, had killed the victim. *Bowles*, 439 F.2d at 541. At trial, the defense called a witness, Neely, who testified that Smith admitted he killed a man on the street but he would blame Neely if the police talked to him. *Id.* Another witness testified that Smith went to him searching for Neely and saying that Neely had been telling people that he killed a soldier. *Id.* The trial court refused to allow Bowles to call Smith as a witness because Smith stated he would invoke his Fifth Amendment privilege against self-incrimination. *Id.*

The D.C. Circuit upheld the trial court's refusal to allow the defendant to call Smith as a witness after it was predetermined that he would invoke his privilege against self-incrimination and based its decision

on the rule that the jury cannot draw any inferences from such a decision. *Id.* The appellate court stated that forcing Smith to invoke his privilege in front of the jury would "only invite the jury to make an improper inference," which would be contrary to the constitutional notion that guilt cannot be inferred from exercising one's constitutional privilege. *Id.* at 542.

The rule *Bedwell* adopted from *Bowles* applies to the State and the defendant alike.

> It is improper for a prosecutor to require a witness to claim his privilege against self-incrimination in the presence of the jury when, as in this case, the prosecutor knows or has reason to anticipate the witness will assert it.

*State v. Allen*, 224 N.W.2d 237, 240 (Iowa 1974). When a jury views an alleged accomplice invoking the privilege, "prejudice arises from the human tendency to treat the claim of privilege as a confession of crime, creating an adverse inference which an accused is powerless to combat by cross-examination." *Id.* at 241.

We disagree with the court of appeals' conclusion that this case presents "unique circumstances" warranting an exception to the *Bedwell* rule merely because Brown testified in Heard's first trial. "[A] waiver of a [F]ifth [A]mendment privilege is limited to the particular proceeding in which the waiver occurs." *State v. Kellogg*, 385 N.W.2d 558, 560 (Iowa 1986) (en banc); *see also Duckworth v. Dist. Ct.*, 220 Iowa 1350, 1361, 264 N.W. 715, 721 (1936) ("[I]t is well settled that a person who has waived such privilege [against self-incrimination] in one trial or proceeding is not estopped to assert it as to the same matter in a subsequent trial or proceeding, because the privilege attaches to the witness in each particular case in which he may be called on to testify . . . ."). Brown's waiver of his privilege in Heard's first trial does not preclude him from invoking the privilege at the second trial because these trials are separate proceedings.

This case differs from one that involves a witness who testifies on direct examination in a jury trial and first invokes the Fifth Amendment privilege on cross-examination in the same trial. *See* Charles R. Nesson & Michael J. Leotta, *The Fifth Amendment Privilege Against Cross-Examination*, 85 Geo. L.J. 1627, 1645 & n.155 (1997) (noting *Bowles* is "followed in almost every circuit" and collecting cases). The district court ruled that Brown's testimony from the first trial could not be introduced in the second. Neither side challenges that ruling on appeal.

Heard asks us to overrule *Bedwell*. "Stare decisis dictates that we decline [Heard's] invitation to overrule our precedent." *State v. Macke*, ___ N.W.2d ___, ___ (Iowa 2019); *see also Book v. Doublestar Dongfeng Tyre Co.*, 860 N.W.2d 576, 594 (Iowa 2015) ("Stare decisis alone dictates continued adherence to our precedent absent a compelling reason to change the law."); *Ackelson v. Manley Toy Direct, L.L.C.*, 832 N.W.2d 678, 688 (Iowa 2013) ("We are slow to depart from stare decisis and only do so under the most cogent circumstances."). Heard offers no compelling reason to overrule *Bedwell*.

Other federal circuits hold that a witness properly invoking a blanket Fifth Amendment privilege should not be compelled to do so in the jury's presence. *See, e.g., United States v. Prince*, 524 F. App'x 377, 379 (9th Cir. 2013); *United States v. Santiago*, 566 F.3d 65, 70 (1st Cir. 2009); *United States v. Bates*, 552 F.3d 472, 475–76 (6th Cir. 2009); *United States v. Mares*, 402 F.3d 511, 514–15 (5th Cir. 2005); *United States v. Reyes*, 362 F.3d 536, 541–42 (8th Cir. 2004); *United States v. Deutsch*, 987 F.2d 878, 883–84 (2d Cir. 1993); *United States v. Harris*, 542 F.2d 1283, 1298 (7th Cir. 1976). Many States, like Iowa, similarly hold that witnesses properly invoking a blanket privilege against self-incrimination should not

be compelled to do so in the presence of the jury.[7]  Because the witness who takes the Fifth does not testify, the defendant has no valid Sixth Amendment confrontation clause claim.  *State v. Ramirez,* 936 A.2d 1254, 1265 (R.I. 2007); *see also Kellogg,* 385 N.W.2d at 560 (noting a "primary object of the confrontation clause" is the defendant's right to cross-examine the witness in front of the jury).

Heard urges us to depart from the clear majority rule and follow *State v. Herbert,* in which West Virginia's high court held a nonparty witness's invocation of the privilege against self-incrimination *must* be made in the presence of the jury, because the privilege "may only be invoked when a witness is asked a potentially incriminating question." 767 S.E.2d 471, 479 (W. Va. 2014).  We find the dissent in *Herbert* more persuasive.

> The majority creates new law for West Virginia, but without support from any other jurisdiction in the entire country.  Overturning recent precedent, the majority holds that in criminal trials, trial courts "shall require" a non-party witness to invoke the privilege against self-incrimination "in

---

[7]*See, e.g.*, *State v. Henry*, 863 P.2d 861, 872–73 (Ariz. 1993); *People v. Dikeman*, 555 P.2d 519, 520–21 (Colo. 1976) (en banc); *State v. Bryant*, 523 A.2d 451, 455–56 (Conn. 1987); *Apfel v. State*, 429 So. 2d 85, 86–87 (Fla. Dist. Ct. App. 1983); *Billings v. State*, 607 S.E.2d 595, 597 (Ga. 2005); *People v. Myers*, 220 N.E.2d 297, 310–11 (Ill. 1966) (per curiam); *State v. Crumm*, 654 P.2d 417, 423 (Kan. 1982); *Clayton v. Commonwealth*, 786 S.W.2d 866, 868 (Ky. 1990); *State v. Berry*, 324 So. 2d 822, 830 (La. 1975); *Commonwealth v. Gagnon*, 557 N.E.2d 728, 737 (Mass. 1990); *People v. Dyer*, 390 N.W.2d 645, 648–49 (Mich. 1986); *State v. Robinson*, 715 N.W.2d 531, 555 (Neb. 2006); *State v. McGraw*, 608 A.2d 1335, 1339 (N.J. 1992); *People v. Thomas*, 415 N.E.2d 931, 934–35 (N.Y. 1980); *Pavatt v. State*, 159 P.3d 272, 286 (Okla. Crim. App. 2007); *State v. Mitchell*, 487 P.2d 1156, 1161 (Or. Ct. App. 1971); *State v. Ramirez*, 936 A.2d 1254, 1265 (R.I. 2007); *State v. Hughes*, 493 S.E.2d 821, 823–24 (S.C. 1997); *State v. Rollins*, 188 S.W.3d 553, 569–70 (Tenn. 2006); *Horner v. State*, 508 S.W.2d 371, 372 (Tex. Crim. App. 1974); *State v. Travis*, 541 P.2d 797, 798–99 (Utah 1975); *State v. Heft*, 517 N.W.2d 494, 501 (Wis. 1994). *But see Gray v. State*, 796 A.2d 697, 717–18 (Md. 2002) (stating in dicta that trial court has discretion to permit defendant to call a witness to invoke his Fifth Amendment privilege in the presence of the jury, but declining to decide whether discretion was abused and reversing on other grounds).

the presence of the jury." This new rule of law is fraught with problems, including the potential for manipulation by allowing either the prosecution or the defendant to call a witness solely to allow the jury to draw adverse inferences from a witness's refusal to testify.

*Id.* at 490 (Loughry, J., concurring in part and dissenting in part). The *Herbert* majority opinion is an outlier we decline to follow.

The district court similarly warned that Heard's stratagem—to compel Brown to invoke his blanket Fifth Amendment privilege in the presence of the jury—is an "invitation for jurisprudential mischief in the criminal process." As the trial judge explained,

> Were [Heard's] procedure sanctioned, any defendant could subpoena any known person of disrepute and force him or her to take the Fifth. There would be no way for the Court, or the jury, to assess the relevance of such an act. It would be evidence by innuendo, untested by the adversarial process.

We agree. The trial judge correctly ruled Heard was not entitled to compel Brown to the stand to take the Fifth in "a Perry Mason moment." *See Bowles*, 439 F.2d at 541–42 ("The jury may think it high courtroom drama of probative significance when a witness 'takes the Fifth.' In reality the probative value of the event is almost entirely undercut by the absence of any requirement that the witness justify his fear of incrimination and by the fact that it is a form of evidence not subject to cross-examination.").

As the State argues, Heard's stratagem would curtail joint criminal trials, because each defendant would demand a separate trial to call accomplices to the stand to take the Fifth in the presence of the jury, hoping the resulting inference of the witnesses' guilt would create reasonable doubt as to the defendant's.

For these reasons, we reaffirm *McDowell* and *Bedwell*. Our holding applies to nonparties properly invoking a blanket Fifth Amendment privilege.

**B. Heard's Motion for a New Trial Based on the Weight of the Evidence.** Heard also appeals the court's denial of his motion for a new trial on grounds that the verdict was against the weight of the evidence. The court of appeals did not reach this issue.

A district court may grant a new trial when it concludes, after weighing the evidence presented and considering the credibility of the witnesses, the jury verdict is contrary to law or evidence, which we have held to mean "contrary to the weight of the evidence." *Nitcher*, 720 N.W.2d at 559. The "weight of the evidence" is a determination that a greater amount of credible evidence supports one side over the other. *State v. Ellis*, 578 N.W.2d 655, 658 (Iowa 1998). The district court should exercise its discretion "with caution" and should grant a new trial "only in exceptional cases in which the evidence preponderates heavily against the verdict." *Id.* at 659 (quoting 3 Charles A. Wright, *Federal Practice and Procedure* § 553, at 245–48 (2d ed. 1982)). Our "appellate review is limited to a review of the exercise of discretion by the trial court, not of the underlying question of whether the verdict is against the weight of the evidence." *State v. Reeves*, 670 N.W.2d 199, 203 (Iowa 2003).

Heard argues the weight of the evidence supports his theory that Brown committed the murder. Although Brown hid the gun after the incident, the evidence points to Heard as the one who committed the crime. Findley testified that, on the evening of the murder when they were talking privately in the bathroom, Heard said he believed Hutchinson was going to rob him and snitch to the police and that Heard told him he was thinking about killing Hutchinson. Findley also testified that he was standing by Brown at the time of the murder and did not see him with a gun when he heard the gunshots, while Heard stood near Hutchinson.

Majors and Daye testified that they saw Brown and Heard change clothes after the incident and that Heard had removed a rubber glove. Majors testified that Heard and Brown had distinctly different reactions immediately after the murder, i.e., Brown appeared upset and cried that evening, while Heard tried to get her to go back to the scene to ensure Hutchinson was dead and described to her in detail how he shot Hutchinson.

The trial judge gave these reasons for rejecting Heard's motion for a new trial based on the weight of the evidence:

> I completely disagree with your evaluation of the evidence. I watched and listened to the same witnesses that the jury did. The witnesses were credible, believable.
>
> While there was impeachment, and you were extremely thorough in that regard, the jury had an opportunity to see them. They had an opportunity to measure them, to evaluate them, to decide whether, in light of the exhaustive cross-examination, they were believable. The jury found them believable. The Court found them believable.
>
> The weight of the evidence here is adverse to your client. It shows that he committed a murder, that it was done with premeditation, that it was done with deliberation, that it was done with the specific intent to kill. Motive is not an element for the government, but clearly the motive was demonstrated in this case. This was a gang killing, in the Court's view, and someone was pushing back against the gang leader and paid the price.
>
> The weight of the evidence here is more than adequate to support this verdict.

We reach the same conclusion. We hold the district court did not abuse its discretion in denying Heard's motion for a new trial.

**C. The Lack of a Jury Finding on Heard's Age.** Heard argues for the first time on appeal that he cannot be sentenced to life in prison without parole because the jury did not find he was an adult at the time of the crime. He did not raise this issue in district court. To the contrary, he filed a motion in limine before trial that confirmed he was born in 1981,

reached age eighteen in 1999, and was age twenty-six when Hutchinson was murdered. Heard makes no claim that his sentence is invalid because he *actually* was under age eighteen at the time of the crime. We conclude Heard is not entitled to relief from his life-without-parole sentence in this direct appeal because he failed to preserve the jury issue by raising it below.

The Supreme Court held in *Alleyne v. United States* that "any fact that increases the mandatory minimum [sentence] is an 'element' [of the crime] that must be submitted to the jury." 570 U.S. 99, 103, 133 S. Ct. 2151, 2155 (2013); *see also Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 2362–63 (2000) ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."). We held in *State v. Sweet* that juvenile offenders cannot be sentenced to life without the possibility of parole under the cruel and unusual punishment clause of the Iowa Constitution. 879 N.W.2d 811, 839 (Iowa 2016). Heard argues that because a sentence of life imprisonment without parole is unconstitutional under *Sweet* unless the defendant is eighteen years of age or older, it follows that, under *Alleyne*, age is an element that must be submitted to the jury before the court can impose that sentence.

The State responds that a defendant's age is not an element in the crime of first-degree murder and adult status does not enhance the mandatory automatic sentence of life without parole; rather, status as a minor is a ground to escape that mandatory sentence. We assume without deciding that when a defendant's age is genuinely in dispute, a jury finding that he or she is eighteen or older should be required before imposing a life-without-parole sentence. But the defendant must raise the issue of

his age and claim to be a minor before the issue must be submitted to the jury. Heard failed to do so. Understandably so because he had already acknowledged in his own court filing that he was an adult at the time of Hutchinson's murder.

Heard contends his life-without-parole sentence is illegal without a jury finding on his age. We disagree. In our view, a defendant, at most, can claim a procedural error if an issue as to his age was not submitted to the jury. *See Tindell v. State*, 629 N.W.2d 357, 359 (Iowa 2001) (en banc). "[A] defective sentencing procedure does not constitute an illegal sentence" that can be challenged at any point. *Id.* at 360 (emphasis omitted). We "do not allow challenges to sentences that, because of procedural errors, are illegally *imposed*." *Id.* at 359.

Heard's claim challenges the procedural jury instruction requirements under *Alleyne*, not the constitutionality of the sentence. As such, Heard's claim is not an attack on an illegal sentence. Because Heard did not raise this challenge during trial, the age issue is not preserved on appeal. *See State v. Taggart*, 430 N.W.2d 423, 425 (Iowa 1988) ("[T]imely objection to jury instructions in criminal prosecutions is necessary in order to preserve any error thereon for appellate review."). We affirm Heard's life-without-parole sentence.

## IV. Disposition.

For the foregoing reasons, we vacate the decision of the court of appeals and affirm the district court's ruling and judgment.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**

All justices concur except McDonald, J., who takes no part.